Jennifer Yeh

2309 Noriega St. #90

San Francisco, CA 94122

(415) 800-3250

j02082024@gmail.com

Pro Se  *Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

*Oakland*

JENNIFER YEH                    )
                                )    Case Number: <u>24-CV-00797 KAW</u>
                                )
            Plaintiff,          )    **PLAINTIFF'S OPPOSITION TO**
                                )    **DEFENDANTS' MOTION TO DISMISS**
                                )
        vs.                     )
                                )    -----
                                )
ALEJANDRO MAYORKAS et al.       )    Hearing on December 19, 2024, at 1:30 PM
                                )
                                )
                                )
                                )
            Defendant(s).       )
                                )
_____ )

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

**I.    Federal Rules of Civil Procedure (FRCP) 8** ........................................................ 1

(1)    The Trade-off Between Short and Plain in Complex Complaints ................................. 1

**(2)**    Intersectionality of Claims ............................................................................... 2

**(3)**    Defendants Violated Multiple Laws per Incident .............................................. 3

(4)    Specific Format of Claims Not Required.................................................. 3

**II.    Subject Matter Jurisdiction FRCP 12(b)(1)** ......................................... 4

(1)    All Violations of Laws Regardless of Classification as Discrimination Claims Should be Adjudicated ....................................................................................................... 5

(2)    Claims against Individual Defendants Should Proceed .............................. 7

(3)    FTCA Claims ........................................................................................... 10

(a)    *Defendant as the United States* ............................................................. 10

(b)    *Exhaustion of Administrative Remedies* ............................................... 10

(c)    *Right to Sue under the FTCA* ............................................................... 11

(4)    APA Claims ............................................................................................. 12

(5)    Waiver of Sovereign Immunity for Claims Other than under the Civil Rights Act of 1964 or the Rehabilitation Act ..................................................................................... 13

(a)    *A Duty of Judicial Review and the Passage of the US Constitution (Especially the 1st Amendment Right to Petition) Overturns the Pre-Democracy Common Law Concept of Sovereign Immunity Against Citizens* ...................................................................... 14

(b)    *Backdoor Return to Segregation* ........................................................... 17

(c)    *Federal Sovereign Immunity Here Violates Policy, Regulation, and Statute* ............... 19

(d)    *Constitutional Rights* ............................................................................ 21

(e)    *42 U.S.C. §§ 1981, 1983, 1985, and 1986* ............................................ 22

i.    ***42 U.S.C. § 1981*** ................................................................................ 23

ii.    ***42 U.S.C. § 1983*** ................................................................................ 23

iii.    ***42 U.S.C. § 1985*** .............................................................................. 24

iv.    ***42 U.S.C. § 1986*** .............................................................................. 24

(f)    *Equal Pay Act (EPA) and Fair Labor Standards Act* (FLSA)...................... 24

(g)    *22 U.S.C. § 7102(8) (Involuntary servitude)* ........................................ 24

*(h)*    *Privacy Act/FOIA* ........................................................................... 24

*(i)*    *"Speak Out Act" and California Silence No More Act (a.k.a. SB 331)* ...................... 25

*(j)*    *California Labor Code § 98.6(b)(1)* .................................................. 25

*(k)*    *Monetary Actions* ........................................................................ 25

**III.    FMLA Claims Jurisdiction** ............................................................. 26

**IV.    Failure to State a Claim (FRCP 12(b)(6))** ..................................... 28

(1)    Title VII Disparate Treatment ...................................................... 30

(2)    Rehabilitation Act Disparate Treatment ......................................... 31

(3)    FMLA Disparate Treatment ........................................................ 31

(4)    Retaliation ............................................................................... 32

(5)    Hostile Work Environment ........................................................... 33

**V.    Judicial Notice** .......................................................................... 34

**VI.    Factual Corrections** .................................................................. 35

**VII.    Summary of Request** ................................................................ 35

## TABLE OF AUTHORITIES

### Cases

*AFGE Local 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007) ......................................................... 8

*Aguirre v. California, Case No.16-cv-05564-HSG (N.D. Cal. Nov. 16, 2017)* ........................... 26

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) ............. 3, 22, 24

*Arnold v. U.S.*, 816 F.2d 1306 (9th Cir. 1987) ............................................................................ 5

*Ballou v. McElvain, 29 F.4th 413 (9th Cir. 2022)* ................................................................. 5, 14

*Bennett v. U.S.*, 803 F.2d 1502 (9th Cir. 1986) ......................................................................... 11

*Bowie v. Maddox*, 642 F. 3d 1122 (DC. Cir. 2011) ................................................................... 23

*Brnovich v. Biden*, 562 F. Supp. 3d 123 (D. Ariz. 2022) ........................................................... 12

*Brock v. U.S.*, 64 F.3d 1421 (9th Cir. 1995) ........................................................... 5, 7, 8, 11, 28

*Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) ...................................................... 34

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) .............................................................................. 17

*Chesier v. On Q Fin. Inc.*, 382 F. Supp. 3d 918 (D. Ariz. 2019) ............................................... 34

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ................................................................................... 1

*Cooper v. Haase*, 750 Fed. App. 600 (9th Cir. 2019) ............................................................... 12

*Cooper v. Nielsen*, 298 F. Supp. 3d 197 (D.D.C. 2018) ............................................................ 18

*Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) .............................................. 28

*Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 394 F.3d 780 (9th Cir. 2008). 5, 6, 19

*Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943 (9th Cir. 2023) .......................... 9

*Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1109-1114 (9th Cir. 2005) ................. 1

*Davis v. Passman*, 442 U.S. 228 (1979) ....................................................................... 16, 21, 26

*Decatur v. Paulding*, 39 U.S. 497 (1840) ................................................................................. 17

*Dep't of Agric. Rural Dev. Rural Housing Serv. v. Kirtz*, 601 U.S. 42 (2024) ................. 17, 23, 28

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ................................................................... 8

*Drevaleva v. Dep't of Veterans Affairs*, 835 F. App'x 221 (9th Cir. 2020) ................................. 1

*Drevaleva v. United States*, 19-cv-01454-HSG (N.D. Cal. Oct. 24, 2023) ................................. 1

*Dunlop v. Machowski*, 421 U.S. 560 (1975) .............................................................................. 15

*Estelle v. Gamble*, 429 U.S. 97 (1976) ..................................................................................... 29

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................................ 8

*Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643 (9th Cir. 2021)........................................ 33

*Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995) ............................................... 33

*Haines v. Kerner*, 404 U.S. 519 (1972) ....................................................................... 29

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)........................................................... 33

*Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114 (9th Cir. 2013) .................. 8

*Hartzler v. Mayorkas*, 2022 WL 15419995 (D.DC 2022) ............................................ 27

*Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, No. 10-3916, 2012 U.S. App. LEXIS 1776
    (3d Cir. 2012) ......................................................................................................... 26

*Hughes v. Pair*, 46 Cal.4th 1035 (Cal. 2009) ............................................................... 34

*Jachetta v. United States*, 653 F.3d 898 (9th Cir. 2011) ............................................... 23

*Johnson* v. *Knowles,* 113 F.3d 1114, 1117 (9th Cir. 1997) ........................................... 29

*Kenyatta v. Moore*, 623 F. Supp. 224 (S.D. Miss. 1985)............................................... 24

*Kirk v. U.S.* (D.Ariz. Apr. 20, 1998, No. CIV-97-648-PCT-SMM) 1998 U.S.Dist.LEXIS 15423,
    at *4 [82 A.F.T.R.2d (RIA) 1998-6563] .................................................................. 25

*Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 690 and 696-97 (1949).......... 22

*Lee v. City of L.A.,* 250 F.3d 668 (9th Cir.2001) ......................................................... 35

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). ............................... 12, 16, 18, 23

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015)..................................................... 12, 15

*Mannat v. Bank of Am.,* 339 F.3d 792 (9th Cir. 2003)................................................. 33

*Marbury v. Madison*, 5 U.S. 137 (1803)...................................................................... 15, 21

*McCulloch v. Maryland*, 17 U.S. 316 (1819) .............................................................. 21

*Med. Imaging & Tech. Alliance v. Librarian of Cong.*, 103 F.4th 830 (D.C. Cir. 2024). ........... 12

*Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024) ............................... 9

*NWDC Resistance & Coal. Whites v. Immigration & Customs Enf't*, 493 F. Supp. 3d 1003 (W.D.
    Wash. 2020). ........................................................................................................... 4

*Obergefell v. Hodges*, 576 U.S. 644 (2015)................................................................ 13, 21, 24

*Olson v. U.S. & MBO Partners, Inc.,* 980 F. 3d 1334 (9th Cir. 2020). ....................... 32

*Otto v. Heckler*, 781 F.2d 754 (9th Cir. 1986). .......................................................... 12

*Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) ............................... 34

*Sanders v. City of Newport*, 657 F.3d 772 (9th Cir. 2011) ......................................... 29

*Sanghvi v. City of Claremont*, 328 F.3d 532, 540 (9th Cir. 2003)...............................................29

*Sloman v. Tadlock,* 21 F.3d 1462 (9th Cir. 1994) ..........................................................................22

*Swartz v. KPMG LLP,* 476 F.3d 756 (9th Cir.2007)........................................................................35

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) ................................................................................3

*Tallacus v. U.S.*, 113 Fed. Cl. 149, 2013 WL 5665260 (Fed. Cl. 2013)........................................24

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) .................1

*U.S. v. Yakima Tribal Ct.*, 806 F.2d 853, 859 (9th Cir. 1986) ........................................................22

*Ward v. EEOC,* 719 F.2d 311 (9th Cir. 1983). ...............................................................................13

*White v. Gen. Servs. Admin.*, 652 F.2d 913 (9th Cir. 1981)............................................................5

*Xin Liu v. Amway Corp.*, 347 F. 3d 1125 (9th Cir. 2003)..........................................25, 27, 32

## Constitutional Provisions

U.S. CONST. amend. I ...............................................................................................3, 6, 14

U.S. CONST. amend. V ...............................................................................................6, 15

U.S. CONST. amend. X .....................................................................................................15

U.S. CONST. amend. XI .....................................................................................................15

U.S. CONST. amend. XIII ...................................................................................................24

U.S. CONST. art. III § 2, cl. 1 .......................................................................................14, 21

## Statutes

22 U.S.C. § 7102(8) ...........................................................................................................24

28 U.S.C. § 1343 ...................................................................................7, 14, 21, 24, 25

28 U.S.C. § 1346(a)(2) ................................................................................................25, 28

28 U.S.C. § 1346(b)(1) .....................................................................................................26

28 U.S.C. § 1361 .......................................................................................................15, 28

28 U.S.C. § 1491 ................................................................................................................26

28 U.S.C. § 2602 ................................................................................................................27

28 U.S.C. §§ 1602 et seq..................................................................................................16

28 U.S.C. §1331 ...................................................................................................................5

29 U.S.C. § 701 et seq. (Rehabilitation Act) ...........................3, 4, 5, 6, 7, 13, 18, 19, 29, 31, 33

29 U.S.C. §§ 2601 et seq., as amended (Title I of the Family and Medical Leave Act) ... 3, 6, 7, 8, 17, 18, 19, 26, 27, 28, 29, 31, 32

42 U.S.C. § 1343 ................................................................................................................ 5

42 U.S.C. § 19403(b) ......................................................................................................... 25

42 U.S.C. § 1983 .............................................................................................. 3, 8, 22, 23

42 U.S.C. §§ 2000d & 2000e et seq. (Civil Rights Act of 1964) .............. 3, 5, 6, 7, 13, 18, 28, 33

42 U.S.C. §1981 ................................................................................................................ 22

42 U.S.C. §1985 .......................................................................................................... 22, 23

42 U.S.C. §1986 ................................................................................................................ 22

42 U.S.C. §1988 ................................................................................................................ 23

42. U.S.C. § 1981a ........................................................................................................... 25

5 U.S.C. § 3331 ................................................................................................................. 18

5 U.S.C. § 340.401(b) ...................................................................................................... 27

5 U.S.C. § 552 .................................................................................................................... 7

5 U.S.C. § 552a ........................................................................................................... 7, 25

5 U.S.C. § 630(b)(2)(ii) ................................................................................................... 26

5 U.S.C. § 702 ........................................................................................................... 12, 25

5 U.S.C. § 703 ................................................................................................................... 25

5 U.S.C. §§ 6381-6387 (Title II of the Family and Medical Leave Act)... 3, 6, 7, 8, 17, 18, 19, 26, 27, 28, 29, 31, 32

5 U.S.C. ch. 11 ................................................................................................................. 28

California Government Code § 12923(b) ......................................................................... 34

California Labor Code § 98.6(b)(1) .................................................................................. 25

California's Business & Professions Code §§ 6100-6117 (2023) ................................... 10

Crown Proceedings Act, 1947, 10 & 11 Geo. 6. c. 44 ..................................................... 16

Pub. L. 94–574 .................................................................................................................. 12

**Regulations**

28 C.F.R. § 50.15 ............................................................................................................. 19

29 C.F.R. § 1614.108(a) ..................................................................................................... 3

29 C.F.R. § 1614.203 .......................................................................................................... 4

29 C.F.R. § 1614.203(c) ................................................................................................ 19

29 C.F.R. § 825.220(c) ................................................................................................. 32

29 C.F.R. § 825.303 ...................................................................................................... 32

29 C.F.R. Part 1606 ........................................................................................................ 4

29 C.F.R. Parts 1604 ....................................................................................................... 4

44 CFR Part 11 ............................................................................................................. 11

5 C.F.R. § 630.1201(b)(2)(iii) ..................................................................................... 26

Exec. Order No. 13,392, 70 FR 75373 (February 14, 2005) ....................................... 25

Exec. Order No. 13985, 88 F.R. 10825 (January 20, 2021) ........................................ 20

Exec. Order. No. 14091, 3 C.F.R. § 14091 (February 16, 2023) ................................. 20

## Rules

Cal. Rules of Prof'l Conduct r. 5.1, 5.3, and 8.4.1 ...................................................... 18

Federal Rules of Civil Procedure 12(b)(1) ..................................................................... 4

Federal Rules of Civil Procedure 12(b)(6) ................................................................... 28

Federal Rules of Civil Procedure 35 ............................................................................ 10

Federal Rules of Civil Procedure 8 ........................................................................... 1, 4

## Other Authorities

Benjamin Pener Cover, *First Amend. Right to a Remedy*, 50 UC DAVIS L. REV. 1741 (2017).... 15

DHS IG, OIG-21-71, *FEMA Must Take Additional Steps to Better Address Emp. Allegations of Sexual Harassment & Sexual Misconduct* (2021),
    https://www.oig.dhs.gov/sites/default/files/assets/2021-10/OIG-21-71-Oct22.pdf ................. 33

EEOC, *The Family & Med. Leave Act, the ADA, & Title VII of the Civil Rights Act of 1964*,
    EEOC-NVTA-1995-1 (November 1, 1995) ............................................................... 6

Eros DeSouza, *Frequency Rates & Correlates of Contrapower Harassment in Higher Educ.*,
    JOURNAL OF INTERPERSONAL VIOLENCE, 26(1), 158–188 (2011) .............................................. 2

Erwin Chemerinsky, *Against Sovereign Immunity*, 53 STAN. L. REV. 1201-1224 (2001). .... 15, 16

FEMA, Cadre of On-Call Response/Recovery (CORE), https://www.fema.gov/careers/paths/core
    ...................................................................................................................................... 26

Inez Dekker & Julian Barling, *Personal & Org. Predictors of Workplace Sexual Harassment of Women by Men*, JOURNAL OF OCCUPATIONAL HEALTH PSYCHOLOGY, *3*(1), 7–18 (1998), https://doi.org/10.1037/1076-8998.3.1.7 ................................................................. 20

James E. Pfander, *Sovereign Immunity & the Right to Petition: Toward a First Amend. Right to Pursue Judicial Claims against the Gov't*, 91 NW. U.L. REV. 899 (1997) ......................... 14, 15

*Mem. of Understanding Between U.S. OSC & EEOC*, https://www.eeoc.gov/mou/memorandum-understanding-between-us-office-special-counsel-and-equal-employment-opportunity (1988). 6

Meredith Newman, et al., *Sexual Harassment in the Fed. Workplace*, PUB. ADMIN. REVIEW, *63*(4), 472-483 (2003). ................................................................................... 2

Office of Pers. Mgmt, *Strategic Plan FY 2022-2026 Goal 1 Position the Fed. Gov't as a Model Emp'r,* https://www.opm.gov/about-us/reports-publications/agency-plans/strategic-plan/goal-1-position-the-federal-government-as-a-model-employer/ (Mar. 2022)...................................... 20

Rand Corp., RAND_RBA383-1, 2020, *Harassment & Discrimination in the FEMA Workplace*, https://www.rand.org/content/dam/rand/pubs/research_briefs/RBA300/RBA383-1/RAND_RBA383-1.pdf ............................................................................. 33

U.S. Ct. for the Ninth Cir., Manual of Model Civil Jury Instructions, Ch. 10, https://www.ce9.uscourts.gov/jury-instructions/node/166 ................................................. 28

U.S. Ct. for the Ninth Cir., *Manual of Model Jury Instructions, 10.5 Civil Rights—Title VII—Hostile Work Env't,* https://www.ce9.uscourts.gov/jury-instructions/node/666 ..................... 33

U.S. Merit Sys. Protect. Bd., *The Fed. Gov't: A Model Emp'r or a Work in Progress? Perspective from 25 years of the Merit Sys. Principles Survey* (2008) .................................... 20

1

**MEMORANDUM**

2     Plaintiff respectfully requests this Court to deny the motion to dismiss on all 8 questions

3  posed in that motion. *See* §2 of Mot. to Dismiss at 2-3. Authorities that Defendants cited have

4  been overturned or come from unreported cases specific to that case. For example, in *Drevaleva*

5  *v. Dep't of Veterans Affairs*, 835 F. App'x 221, 223 (9th Cir. 2020) (an unpublished decision) by

6  a plaintiff this Court has declared to have a "long history of repetitive and abusive lawsuits."

7  *Drevaleva v. U.S.*, 19-ev-01454-HSG (N.D. Cal. Oct. 24, 2023)

8  **I.    Federal Rules of Civil Procedure (FRCP) 8**

9     FRCP 8 only requires "'a short and plain statement of the claim' that will give the

10 defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*

11 *v. Gibson*, 355 U.S. 41, 47 (1957). A complaint should not be dismissed unless it is "beyond

12 doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief and clear

13 that no amendment could save the complaint. *Conley v. Gibson*, 355 U.S. at 45-46; *Thinket Ink*

14 *Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). For complex,

15 egregious harassment complaints with many violations of laws, parties, incidents, and identities,

16 there is a trade-off between short and plain requirements.

17     (1)    <u>The Trade-off Between Short and Plain in Complex Complaints</u>

18     Trying to strike a balance between clarity and brevity despite the complexity of the case,

19 Plaintiff tried to conserve space while listing facts that satisfy the elements of proof. The listed

20 facts were not unnecessary duplications as Defendants claim, but rather, multiple claims had the

21 same required prima facie elements (e.g., Plaintiff's protected bases). If all claims were separated

22 by law, protected class, and specific incidents or adverse actions—as the Defendants wish—the

23 resulting complaint would be an unwieldy document encompassing over 140,000 claims (using

24 the formula to calculate combinations $(2 \cdot n - 1)! / (n! \cdot (n - 1)!)$). The complexity of the case—

25 its intersectionality, number of violations of law per incident, and number of incidents and

26 parties—makes it challenging to convey claims concisely. Therefore, a 20–25-page complaint in

27 the format Defendants desire is unrealistic.

28

1    Adding (even by reference) descriptions of which facts match which element of proof as

2    Defendants wish could add at least 18 pages per element or 100 extra pages if each discrete event

3    had its own claim. Further limiting each claim to one law would multiply the number of pages

4    severalfold beyond the 100 extra pages. These conservative calculations are based on

5    Defendants' own evaluation of four prima facie elements in a disparate treatment claim, five

6    lines per element (at a minimum of one sentence plus a citation sentence), and at least 100

7    incidents to equal 20 lines per claim (i.e., ≥1 page per claim). *See* Def.'s Mot. to Dismiss at 20.

8    **(2)**    Intersectionality of Claims

9    Intersectional identities cannot be easily disentangled from each other. For example, it is

10   hard to classify discrimination against Catholic priests as only gender discrimination or only

11   religious discrimination because Catholic priests are by definition men. Stereotypes are also not

12   the same when considering intersectional identities compared to solo identities (e.g., Black

13   women or pregnant women versus all women). Research also shows that (in choosing their

14   victims) perpetrators of discrimination account for the intersectionality or level of vulnerability

15   of the victim. *See* Eros DeSouza, *Frequency Rates & Correlates of Contrapower Harassment in*

16   *Higher Educ.*, JOURNAL OF INTERPERSONAL VIOLENCE, 26(1), 158–188 (2011); Meredith

17   Newman, et al., *Sexual Harassment in the Fed. Workplace*, PUB. ADMIN. REVIEW, *63*(4), 472-

18   483 (2003). Further discovery could reveal the scope, intent, and specifically targeted

19   combination of identities behind specific incidents. Plaintiff has some examples from the FEMA

20   Office of Chief Counsel (OCC) of differential treatment between women of color who engaged

21   in protected activity, all women, and white men who had not engaged in protected activity where

22   women of color who engaged in protected activity faced the harshest treatment while white men

23   who did not engage in protected activity faced no consequences. However, discovery could

24   reveal more data showing which specific combination of identities Defendants targeted. Plaintiff

25   is currently not available to Plaintiff because FEMA has refused to conduct an investigation as it

26   was required to do so in the formal Equal Employment Opportunity (EEO) complaints process

27   nor any other internal agency investigation and the Equal Employment Opportunity Commission

28

1  (EEOC) declined to order one as well.  *See* 29 C.F.R. § 1614.108(a) ("The investigation of

2  complaints shall be conducted by the agency against which the complaint has been filed.").

3  **(3)**     Defendants Violated Multiple Laws per Incident

4       Many times, one event violated multiple laws, complicating the drafting of the First

5  Amended Complaint (FAC). Aside from harassment claims, Plaintiff is willing to separate out

6  one violation of law per claim, particularly for laws with prima facie elements that differ a lot

7  from each other. However, doing so will significantly increase the number of claims and length

8  of the complaint. Claims simply could be redrafted with subparts for each law in issue (e.g.,

9  Claim 1(a) for the Rehabilitation Act and 1(b) for the Civil Rights Act of 1964, especially for

10 overlapping laws with mostly the same prima facie elements (e.g., retaliation or disparate under

11 the Rehabilitation Act and Civil Rights Act) or mirror prima facie elements (e.g., Plaintiff's

12 employer forbade Plaintiff from exercising rights to take leave under the FMLA or

13 Rehabilitation Act concurrently, only consecutively). *See* 42 U.S.C. §§ 2000d & 2000e et seq.*;*

14 29 U.S.C. §§ 2601 et seq., as amended; 5 U.S.C. §§ 6381-6387; 29 U.S.C. § 701 et seq.. Even if

15 Plaintiff were to separate out one law per claim, it is not clear what Defendants expect Plaintiff

16 to do where one law (e.g., 42 U.S.C. §1983) provides jurisdiction to sue for violations of another

17 law (e.g., 1st Amendment).  *See* § II(5)(d) below, and *Ariz. Students' Ass'n v. Ariz. Bd. of*

18 *Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

19    (4) Specific Format of Claims Not Required

20       The claims are labeled: specifically identifying the issues and clearly articulating the

21 relevant legal theories and themes. Adhering to Defendants' demands would only increase the

22 length of the complaint. Defendants' demands for a specific format are not required: keeping one

23 law per claim, chronological order, or matching defendants to claims. Defendants' own recitation

24 of the prima facie elements shows that prima facie elements are not in chronological order. The

25 FAC used chronological order (e.g., timeline) where feasible and logical. Although Plaintiff did

26 not need to specify which Defendant committed each wrongful act before discovery unveils

27 additional facts, the FAC specifically named or identified individuals responsible by their job

28 classifications where possible. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002). Because

1   complaints are not persuasive pleadings, Plaintiff does not need to show how statements or facts
2   relate to each element of proof but only needs to list the facts that support each element of proof
3   because the Court and parties are already familiar with the relevant legal standards. For example,
4   the complaint should be able to reference by incorporation that Asian is a race without repeating
5   the fact per claim, or even list Asian is a race as Defendants should be able to figure out how the
6   fact "Asian" is a race, a protected basis, and an element of proof in discrimination claims. The
7   Rehabilitation Act and Civil Rights Act of 1964 refer only to certain protected classes, so it is
8   evident which listed protected classes match which laws. *See* 29 U.S.C. § 701 et seq.; 29 C.F.R.
9   § 1614.203; 42 U.S.C. §§ 2000e et seq.; 29 C.F.R. Parts 1604 and 1606. Therefore, the FAC
10  meets the conditions of FRCP 8 and effectively communicates the allegations.

11  **II.     Subject Matter Jurisdiction FRCP 12(b)(1)**

12          "A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the
13          factual allegations in the light most favorable to the plaintiff, the action: (1) does
14          not arise under the Constitution, laws, or treaties of the United States, or does not
15          fall within one of the other enumerated categories of Article III, Section 2, of the
16          Constitution; (2) is not a case or controversy within the meaning of the Constitution;
17          or (3) is not one described by any jurisdictional statute."

18  *NWDC Resistance & Coal. Whites v. Immigration & Customs Enf't*, 493 F. Supp. 3d 1003, 1008
19  (W.D. Wash. 2020). This case meets none of the requirements that require a case dismissal under
20  FRCP 12(b)(1) as a case involving federal questions and the US government.

21          In addition to § II of the FAC (titled "JURISDICTION") that describes some of the
22  Court's bases of jurisdiction, the following sections will further discuss several reasons why this
23  case should not be dismissed for lack of subject matter jurisdiction, including when sovereign
24  immunity does not apply or when it has been waived for specific laws. FAC at 4-5. Even if the
25  Court determines it lacks subject matter jurisdiction over certain claims per certain laws, rules of
26  construction require courts to interpret, where possible, claims under laws within their
27  jurisdiction in a manner that does not conflict with other laws, including those over which the
28  Court lacks jurisdiction. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 394

1   F.3d 780, 790 (9th Cir. 2008). Since Defendants have not challenged the subject matter

2   jurisdiction of the Civil Rights Act of 1964 and the Rehabilitation Act, they will not be discussed

3   here, and it is assumed that they are not challenging jurisdiction for those laws.

4         (1) <u>All Violations of Laws Regardless of Classification as Discrimination Claims</u>

5   <u>Should be Adjudicated</u>

6         All violations of law, regardless of whether they are classified as discrimination claims,

7   must be adjudicated. Federal courts have the right to hear issues of federal questions. 28 U.S.C.

8   §1331. Actions with the same facts can violate multiple laws without being considered

9   discrimination. "Title VII does not preclude separate remedies for unconstitutional action other

10  than discrimination based on race, sex, religion, or national origin." *White v. Gen. Servs. Admin.*,

11  652 F.2d 913, 917 (9th Cir. 1981)."Title VII is not the exclusive remedy for federal employees

12  who suffer 'highly personal' wrongs, such as defamation, harassing phone calls, and physical

13  abuse." *Arnold v. U.S.*, 816 F.2d 1306, 1311 (9th Cir. 1987). Furthermore, "the ability to

14  characterize the ultimate harm suffered as including a lesser offense (*i.e.,* battery or

15  discrimination) does not change the nature or extent of the ultimate harm. When the harm

16  suffered involves something more than discrimination, the victim can bring a separate claim."

17  *Brock v. U.S.*, 64 F.3d 1421, 1423 (9th Cir. 1995). As noted in *Brock*, "for cases in which the

18  United States negligently supervised, it could escape liability for damages if the misconduct at

19  issue was both assaultive and discriminatory, but not if it was solely assaultive. This result would

20  turn Title VII on its head." *Id.* at 1423. Constitutional and other statutory claims have coexisted

21  with discrimination claims for government employees in this circuit. The court in *Ballou v.*

22  *McElvain* permitted claims under the 1st Amendment, the Equal Protection Clause, Title VII,

23  and 42 U.S.C. § 1343 to proceed together for a government employee suing the government

24  employer and another government employee in his individual capacity. *Ballou v. McElvain*, 29

25  F.4th 413 (9th Cir. 2022). These decisions illustrate how constitutional, statutory, or regulatory

26  violations should not be dismissed merely because they coincide with discrimination claims.

27        Conflating all claims into a singular category of discrimination obscures broader

28  violations. It glosses over the difference between the behavior alleged (e.g., sexist jokes) and

how others adjudicated or processed the complaint (i.e., due process violations or discriminatory decisions). While some events violate multiple laws and various laws overlap, laws differ as to their definitions and standards for liability and their remedies. For example, FMLA claims are based on serious health conditions, not race (like the Civil Rights Act of 1964 covers), nor disability (which the Rehabilitation Act covers). *See* 42 U.S.C. §§ 2000e et seq.; 29 U.S.C. §§ 2601 et seq., as amended; 5 U.S.C. §§ 6381-6387; 29 U.S.C. § 701 et seq.. Statutes themselves, EEOC policy documents, and MOUs between agencies show that the Rehabilitation Act and Civil Rights Act do not limit claims under the FMLA and other laws, so Defendants should be estopped from making claims contrary to US government policy. *See e.g., Mem. of Understanding Between US OSC & EEOC*, https://www.eeoc.gov/mou/memorandum-understanding-between-us-office-special-counsel-and-equal-employment-opportunity (1988); EEOC, *The Family & Med. Leave Act, the ADA, & Title VII of the Civil Rights Act of 1964*, EEOC-NVTA-1995-1 (November 1, 1995)

Conflating all claims would also provide a dangerous incentive for perpetrators where lesser misconduct would have a proportionally greater punishment than more egregious conduct. It would also take away victims' full rights to their remedies and make them bear the responsibility for the misdeeds of perpetrators instead of being made whole with a partial remedy, if any. *See* Amend. I (right to petition) & V (takings). FEMA absolutely considered the amount of damages for legal cases. Even if morality did not stop Defendants from refraining from engaging in misconduct, at least they should not be incentivized to engage in the conduct.

Defendants' attempt to bar judicial review over constitutional claims disregards the supremacy of the Constitution by dismissing constitutional claims in favor of statutory ones. The Constitution represents a higher law than statutory provisions. Thus, statutes may not permit violations of the Constitution, must not exceed the scope granted by the US Constitution, and should not be interpreted in a way that permits the violation of other laws. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 394 F.3d at 790.

In this case, it would also not make sense to dismiss all claims except for under Title VII of the Civil Rights Act, Rehabilitation Act, or the FMLA because some of the instances alleged

affect other titles (Title VI), touch on Plaintiff's rights as a US citizen, or occurred after she was no longer employed at FEMA. Doing so would create the same perverse situation described in *Brock* that those who discriminate against others could avoid liability for all claims except discrimination but those who do not discriminate but violate the same non-discrimination laws could be held liable for the violation of those laws. *Brock v. U.S.*, 64 F.3d at 1423.

For example, all citizens have the right to make a FOIA or Privacy Act request. *See* 5 U.S.C. §§ 552 and 552a. Plaintiff's rights to make FOIA and Privacy Act requests are separate from her employment status at FEMA. Although the EEOC ordered (on April 28, 2022) that FEMA retroactively extend (on paper) Plaintiff's employment until August 2020, Plaintiff was no longer working at FEMA (i.e., a private citizen) in 2020 or 2022 when she requested via FOIA the video recordings related to her discrimination cases against FEMA. While denying Plaintiff access to information because she engaged in protected activity would be part of a claim of continuing harassment based on Title VII (while she was a private citizen), disparate treatment or disparate impact would be based on Title VI (not Title VII) of the Civil Rights Act of 1964 (if the EEOC does not again retroactively extend her employment) and other related laws, such as the Privacy Act, FOIA, and 28 U.S.C. § 1343. Title VII, FMLA, and the Rehabilitation Act would not be sufficient for the FOIA/Privacy Act and post-FEMA-employment instances because Plaintiff would have no recourse to exhaust her administrative remedies internally as she and Mr. Scott were no longer FEMA employees. For both cases, if the Court were to dismiss all claims except for under Title VII of the Civil Rights Act, the Rehabilitation Act, and FMLA, it would reach an absurd result of denying rights all citizens have without any recourse just because they engaged in protected activity or were part of certain protected classes. Such a dismissal would circumvent the purpose of these laws and their anti-retaliation anti-interference provisions. *Brock v. U.S.*, 64 F.3d at 1423. Therefore, it is essential that all violations of law, regardless of their categorization, be recognized and adjudicated.

(2) <u>Claims against Individual Defendants Should Proceed</u>

This case goes beyond just holding FEMA/DHS accountable. Even if they no longer work at FEMA, individual actors who violated Plaintiff's rights must learn to act differently, be

accountable for their actions, and not continue to harm Plaintiff anytime anywhere. They also should not evade liability for all time because they once used to work for the government. These individual Defendants are being sued for actions taken both during and after their employment at FEMA/DHS. For example, Robert Scott lied at the 2020 EEOC hearing and defamed Plaintiff after they both had already left the agency. FEMA has stated it would not take action related to a former employee, which perpetuates a culture of harassment because the agency refuses to correct past harm. Allowing claims against individuals to proceed is the only way to ensure accountability and prevent future harm as harassment against Plaintiff did not stop when she switched supervisors and locations, and even when she left the agency.

It is well-established that plaintiffs can bring claims, such as tort, FMLA, Title VII, 42 U.S.C. § 1983, and constitutional claims, against individuals working for the US government. In *Brock v. U.S.*, the 9th Circuit confirmed that the government conceded this issue, meaning it should be estopped from now adopting a contradictory stance. *Brock v. U.S.*, 64 F.3d at 1423. Under § 1983, individuals can be sued in their personal capacities for violating constitutional or statutory rights. Cases have found that "persons" subject to § 1983 liability include individuals, municipalities, and other local governing bodies. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (sued in individual capacity); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (sued in official capacity). The US Supreme Court has held that government officials may be sued individually for injunctive relief when they violate constitutional rights, even if the government itself is immune from suit. *See Ex parte Young*, 209 U.S. 123 (1908). Similarly, federal employee plaintiffs may sue individual defendants who are federal employees for equitable relief. *AFGE Local 1 v. Stone*, 502 F.3d 1027, 1036 (9th Cir. 2007). The 9th Circuit recently reaffirmed this principle in *Ballou v. McElvain*, where it denied qualified immunity to a government employee sued by another government employee in a discrimination suit. *Ballou v. McElvain*, 29 F.4th 413 (9th Cir. 2022). Therefore, the suit against the named individual Defendants should be able to proceed, especially given that some of these Defendants involved have either moved to different agencies or been rehired by FEMA given the ongoing risks of harm.

1      Because various agencies repeatedly failed to protect Plaintiff from harassment and other

2  harm by these individuals, their dereliction of duty shows the heightened need to sue these

3  individuals in their personal capacities. These individual perpetrators must not be allowed

4  to inflict further harm wherever they are. Suing FEMA/DHS alone is insufficient because

5  individual defendants can evade liability by retiring, quitting, or transferring to new agencies,

6  allowing them to continue discriminatory behavior. In *Munoz v. Superior Court of L.A. County*,

7  the court held that plaintiffs can sometimes sue state officials for prospective injunctive relief to

8  prevent future statutory or constitutional harms. *See Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th

9  977 (9th Cir. 2024). *See also Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943 (9th

10  Cir. 2023). This concern is especially pressing in this case where DHS/FEMA's stance has been

11  that they would only respond to Plaintiff's complaints if a current employee directly committed

12  battery (not through a weapon or trap), left a mark, and admitted to the action. FEMA has

13  repeatedly refused to correct the hostile work environment (HWE) and has maintained that they

14  had no proactive duty to protect Plaintiff from her harassers.  Instead, FEMA promoted accused

15  individuals after Plaintiff escalated her complaints through the chain of command, and none of

16  the individuals named in Plaintiff's complaints were trained due to the EEOC's orders for

17  training. Neither the EEOC nor FEMA/DHS did anything to ensure that named harassers were at

18  least trained nor enforced the EEOC's orders for specialized training relevant to the case.

19      The federal ADR community is small with regular all-government meetings. The Plaintiff

20  should not be forced to conduct additional research to avoid working at agencies where her

21  former harassers are employed. The only effective way to prevent future harassment is to hold

22  these individuals accountable in their personal capacities, ensuring that they (not Plaintiff) face

23  consequences for their behavior regardless of their employment status.

24      Even if the Plaintiff's claim against the agency defendants is dismissed, her claims

25  against the individual defendants should still proceed. Suing these individuals in their personal

26  capacities ensures that the Plaintiff has a path to justice and protection from future harassment,

27  retaliation, discrimination, and other violations of the law. *See Ballou v. McElvain*, 29 F.4th 413

28  (9th Cir. 2022). In addition, Plaintiff has an interest in pursuing medical tests for these individual

defendants, a remedy that would be unavailable if the claims were brought solely against the agency. FRCP 35. Without allowing these claims to continue, the Plaintiff would remain vulnerable to the same hostile environment that has persisted throughout her case.

Some of these Defendants sued in their individual capacities have ties to California as attorneys barred in California or supervising attorneys barred in California or other states in the 9th Circuit, thereby falling under California's jurisdiction. Limiting claims to only discrimination also risks establishing a dangerous precedent, hindering state bar associations from disciplining attorneys for professional responsibility violations, including discrimination, as codified in California's Business and Professions Code. *See* Cal. Bus. & Prof. Code §§ 6100-6117 (2023).

(3) <u>FTCA Claims</u>

Contrary to Defendants' claim, Plaintiff has exhausted all remedies and has the right to bring claims based on the FTCA. *See* § VII of FAC.

(a) *Defendant as the United States*

The Plaintiff is amenable to adding the United States as a defendant if required. Plaintiff filed using the names of DHS and FEMA based on the prior representations she received from various agencies stating that her employing agency FEMA/DHS would be responsible for all claims (including the processing of such claims) even if other agencies or government contractors were involved. When Plaintiff tried to add other Defendants (US Department of Health and Human Services (HHS) and their contractor) to her subsequent EEOC case against FEMA/DHS because FEMA/DHS through an interagency agreement contracted with HHS who subcontracted out to a third party, HHS and the EEOC to add any other entity besides FEMA/DHS as a Defendant nor process any claims under the theory that the employing agency was responsible for liability and processing of all claims. Similarly, OSC claimed that the EEOC would process all of Plaintiff's claims (even those not related to discrimination statutes or regulations). If the Court allows it, adding the US as a party could help alleviate the bureaucratic black hole issue Plaintiff has encountered for other claims as well.

(b) *Exhaustion of Administrative Remedies*

Plaintiff has fully exhausted administrative remedies under the legal requirements for filing claims. *See* § VII (Exhaustion of Remedies). The FTCA mandates that claims against the United States must first be presented to the appropriate federal agency. Under 44 CFR Part 11, Subpart B, OCC, or its designee is responsible for addressing FTCA claims once Plaintiff notifies OCC of her allegations. As outlined in § VII of the FAC on the exhaustion of administrative remedies, Plaintiff has duly reported her claims to OCC in several ways: through her OCC chain of command within (first-line supervisors up to Mr. Doolin who in turn reported the matter to Chief Counsel Mr. Sevier), the FEMA Administrative Investigations Division (AID) Team (which includes OCC representatives), to the Office of Equal Rights (who would have an OCC lawyer review the matter), and the Office of Professional Responsibility (who would also likely have an OCC lawyer review the matter), and various other OCC employees, as well as indirectly to the EEOC and DHS Inspector General (IG). *See* FAC § VII at 9. In addition, the perpetrators who worked in OCC would themselves be made aware of the torts because they committed them. Plaintiff's efforts to engage the appropriate offices demonstrate her compliance with the procedural requirements and reinforces her right to proceed with this legal action.

### (c)  Right to Sue under the FTCA

Plaintiff has a right to sue the United States under the FTCA for the negligent supervision of its employees, which led to the harassment and discrimination Plaintiff suffered. As the 9th Circuit held in *Brock v. United States*, if such FTCA claims were barred "for cases in which the United States negligently supervised, it could escape liability for damages if the misconduct at issue was both assaultive and discriminatory, but not if it was solely assaultive." 64 F.3d at 1423. Therefore, FTCA's assault and battery exception does not immunize the government from liability for negligently hiring and supervising an employee. *Brock v. U.S.*, 64 F.3d 1421 at 1425, citing *Bennett v. U.S.*, 803 F.2d 1502, 1504 (9th Cir. 1986). In *Bennett v. U.S.*, the court ruled that FTCA's negligent hiring and supervision claims are valid even when sexual assault is involved, as it is a form of harassment based on sex. *Bennett*, 803 F.2d at 1503-1505. The court in *Bennett* found that the rationale behind the assault and battery exception was for actions beyond the government's control. *Id*. Supervisors lose their immunity for torts when they engage

in assault, battery, defamation, and conspiracy to defraud an employee, which are acts beyond the outer perimeter of their authority. *Otto v. Heckler*, 781 F.2d 754 (9th Cir. 1986).

However, in this case, the government had ample opportunity (at least 10 years) and several complaints to prevent harassment and discrimination. Plaintiff's allegations involve both assault and discrimination, making the government liable for negligent supervision. FEMA/DHS negligently hired, retained, and promoted the individual Defendants despite knowledge of their previous misconduct and involvement in harassing Plaintiff, despite several background checks, warnings, and complaints lodged against perpetrators. By failing to take appropriate action, the government perpetuated an HWE. Furthermore, attorneys who violate professional rules of responsibility, as well as federal government employees who violate the US Constitution since federal employees take an oath to uphold the Constitution, should qualify as acting beyond the outer perimeter of their duties. Even if the Court wishes to dismiss the FTCA now, the court in *Otto* held that a determination of whether an act exceeds the outer perimeter of their authority issues should not be dismissed at the pleading stage. *Otto v. Heckler*, 781 F.2d 754 (9th Cir. 1986). Consequently, the FTCA claim should be allowed to proceed.

(4) APA Claims

The recent Supreme Court decision in *Loper Bright Enterprises v. Raimondo* underscores the judiciary's critical role in reviewing APA cases. 144 S. Ct. 2244 (2024). Federal courts have consistently held a "strong presumption favoring judicial review of administrative action." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015). The APA's judicial review provision provides that a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action is entitled to judicial review. *Brnovich v. Biden*, 562 F. Supp. 3d 123, 132 (D. Ariz. 2022). The APA itself provides a cause of action for such review and allows courts to assess agency actions. *Med. Imaging & Tech. Alliance v. Librarian of Cong.*, 103 F.4th 830 (D.C. Cir. 2024); 5 U.S.C. § 702. In addition, multiple cases show that the APA waives federal sovereign immunity by statute in 5 U.S.C. § 702 and 706. *See Cooper v. Haase*, 750 Fed. App. 600 (9th Cir. 2019); *Brnovich v. Biden*, 562 F. Supp. 3d at 132. *See also Med. Imaging*, 103 F.4th 830. Moreover, Congress removed immunity for APA claims Pub. L. 94–574 was passed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Contrary to Defendants' assertions regarding the *Ward v. EEOC* case, Plaintiff here seeks the review of a final decision by the EEOC, asserting that the decision was unlawful, an abuse of discretion, and violated due process rights. *Ward v. EEOC,* 719 F.2d 311, 313-14 (9th Cir. 1983). Plaintiff is contesting an EEOC final decision, not its negligence or indecision. The current case is distinguishable from *Ward v. EEOC* where the plaintiff sued the EEOC for failing to act. 719 F.2d at 313-14. If necessary, Plaintiff is prepared to amend the FAC to include the United States or the relevant federal agency as a defendant, reflecting guidance previously received from federal agencies. If Plaintiff will be required to add the EEOC as was in the *Ward* as a Defendant or simply the United States to cover all actions, then Plaintiff is willing to do so. Plaintiff relied on what several agencies had previously told her that her employing agency would be the responsible agency for liability and processing complaints (i.e., listed FEMA/DHS but no other agencies as the defendant).

It is crucial to ensure that federal employees can challenge decisions made in the EEO process without unnecessary delays. Prolonged administrative delays or the failure to properly adjudicate EEO complaints could impair due process, harm plaintiffs' ability to gather evidence, and reduce the effectiveness of remedies. This reinforces the need for judicial review to ensure fairness and accountability in the EEO process.

(5) <u>Waiver of Sovereign Immunity for Claims Other than under the Civil Rights Act of 1964 or the Rehabilitation Act</u>

Defendants' argument of federal sovereign immunity is prohibited by law, interferes with the duty of judicial review of executive action (especially as it relates to the violation of fundamental rights and the Constitution), and creates a backdoor to reinstate segregation so that some citizens can have and enforce their rights whereas others cannot. "The dynamic of our constitutional system is that individuals need not await legislative action before asserting a fundamental right." *Obergefell v. Hodges*, 576 U.S. 644, 677 (2015). All of the claims are related to the protection of fundamental rights (including civil rights), even if they do not directly violate civil rights or are not directly brought under the Civil Rights Act or the Rehabilitation Act.  For example, Defendants tried to hide evidence of their discrimination and retaliation of Plaintiff by

PLAINTIFF'S OPPOSITION TO DISMISS          24-CV-00797 KAW                    13

refusing to release documents Plaintiff requested by FOIA/Privacy Act, but FOIA/Privacy Act are not facially civil rights statutes as all citizens have the right to request documents. Therefore, 28 U.S.C. § 1343 would provide jurisdiction for the district court to hear all of the claims.

Defendants' argument that only a narrow set of laws have a waiver to immunity does not correspond to reality. The 9th Circuit has allowed several claims for employment cases other than on only the narrow subset of laws desired by Defendants. *See Ballou v. McElvain*, 29 F.4th 413 (9th Cir. 2022). The following sections also demonstrate other cases or statutes that show a waiver of immunity or how an authorizing statute is not a prerequisite for judicial review. Even if the Court were to find sovereign immunity for the following provisions, immunity would only apply to the government agency defendants and not to individual defendants. *See* FAC § II(2). See § II(3) for FTCA claims and § II(4) above for APA claims.

(a)    *A Duty of Judicial Review and the Passage of the US Constitution (Especially the 1st Amendment Right to Petition) Overturns the Pre-Democracy Common Law Concept of Sovereign Immunity Against Citizens*

Defendants' sovereign immunity argument is based on a fundamental misunderstanding of the principles of judicial review and the scope of federal court jurisdiction. U.S. CONST. art. III § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States…to Controversies to which the United States shall be a Party…between Citizens of different States…). The 1st Amendment provides the right to seek redress in court. Amend. I ("the right…to petition the Government for a redress of grievances"). This right includes the substantive ability to vindicate a legal right and request damages, not just file a lawsuit, by the plain language and historical reading of the 1st Amendment.

If plaintiffs are to reach the redress (i.e., damages) stage of a case, a case cannot be dismissed prematurely under FRCP 12(b)(1) at the complaints drafting stage. For the historical context and intent of the Right to Petition to ensure no one is above the law and fix prior issues with an unresponsive government, *see* James E. Pfander, *Sovereign Immunity & the Right to Petition: Toward a First Amend. Right to Pursue Judicial Claims against the Gov't*, 91 NW. U.L. REV. 899 (1997) and Benjamin Pener Cover, *First Amend. Right to a Remedy*, 50 UC DAVIS L.

REV. 1741 (2017). Dismissing a claim without a decision on the merits and absent a default judgment denies plaintiffs their due process rights under the 5th and 14th Amendments. *See* Erwin Chemerinsky, *Against Sovereign Immunity*, 53 STAN. L. REV. 1201-1224 (2001). The 1st Amendment right to petition, combined with the 5th and 14th Amendments right to due process, and 10th Amendment (reserving powers all not explicitly granted to the federal government to the people or states), indicate that sovereign immunity does not apply against US citizens unless there is a constitutional amendment, as happened with the 11th Amendment granting sovereign immunity to states. *See* Chemerinsky (2001) at 2015; Amend. I, V, X & XI. The term "Government" instead of "Congress" was not a mistake because the founding fathers wanted citizens to be able to petition all branches of government (including the judiciary). *See* Pfander (1997); Pener Cover (2017). Unlike the other two branches of government that can act directly in response to petitions, the judiciary must make a finding before offering relief.

*Marbury v. Madison* corresponds to this view of a right to relief and upheld the judicial review of executive actions, particularly if such actions injured a plaintiff, involved a plaintiff's civil liberties and rights, and the government has a duty. 5 U.S. 137 (1803). Defendants effectively are asking the Court to overturn the super-precedential case of *Marbury v. Madison* in arguing sovereign immunity that precludes judicial review of executive actions, particularly of a constitutional nature where there is a clear duty. *See id. See also* Chemerinsky (2001). This is particularly true given the existence of the Mandamus Act, which has the Court enforce a duty, because there would be no way to enforce a duty if there were no way to review the duty (i.e., sovereign immunity). 28 U.S.C. § 1361. "[T]he agency bears a 'heavy burden' in attempting to show that Congress prohibit[ed] all judicial review of the agency's compliance with a legislative mandate." *Mach,* 575 U.S. 480 at 486 (citing *Dunlop v. Machowski*, 421 U.S.560, 567 (1975)). Defendants have not met this burden.

Sovereign immunity should not shield the federal government from judicial review, particularly when constitutional rights are at stake and US citizens are bringing claims against their own government. *See Marbury v. Madison*, 5 U.S. 137 (1803). The concept of federal sovereign immunity came from a pre-democracy common law notion exempting monarchs from

1  lawsuits because of their superiority over their subjects, which the US no longer has. *See*

2  Chemerinsky (2001). Signing the US Constitution overturned the sovereign immunity defense in

3  suits by citizens against their own governments and a system of placing monarchs at the top of

4  the hierarchy. *See id.* As the UK has moved toward more democratic forms of rule, citizens now

5  have the right to sue the government. *See* Crown Proceedings Act, 1947, 10 & 11 Geo. 6. c. 44.

6        Sovereign immunity primarily protects sovereigns of equal nature from judging the

7  validity of each other's laws or actions rather than helping a sovereign evade accountability to its

8  own citizens in a democracy. Sovereign immunity has only been waived where Congress has

9  passed a law instituting immunity (e.g., Foreign Sovereign Immunities Act) or where the US

10  Constitution (Eleventh Amendment) has specified that it is so, so Congress cannot be said to

11  have intended federal sovereign immunity where neither Congress passed a statute nor a

12  Constitutional Amendment. *See* 28 U.S.C. §§ 1602 et seq.; U.S. CONST. amend. XI. "[S]ilence is

13  far from 'the clearly discernible will of Congress'." *Davis v. Passman*, 442 U.S. 228, 247 (1979).

14  It is also difficult to believe citizens would want Congress to block a way for them to enforce

15  their rights and seek justice. Such a law would also violate the 1st Amendment's Petition Clause.

16  Amend. I. ("the right…to petition the Government for a redress of grievances"). Thus, the

17  judiciary must review all cases where immunity is not specified by statute or the US

18  Constitution, especially where the laws create a duty.

19        Defendants' argument that sovereign immunity applies here is a misguided attempt to

20  undermine the foundational principles of our democracy and the system of checks and balances.

21  The US Supreme Court in *Loper* reaffirmed that the judiciary (not the executive branch) has the

22  responsibility to determine the law and that deference should not be given to the executive

23  branch (not to one faction or a few employees within the executive branch as is the case here) to

24  determine the law for all federal employees and all US citizens. 144 S. Ct. 2244, 2248 (2024).

25  Federal sovereign immunity removes the duty of judicial review (especially of executive action)

26  away from the judiciary and gives deference to the executive branch to determine or interpret the

27  law, which *Loper* has explicitly stated is not allowed. *Id.* at 2248. With *Loper*, the check on the

28  executive branch has been reaffirmed such that the judiciary has the responsibility to review the

actions of the executive branch, which means that a potential remedy for Plaintiff must be allowed (i.e., no federal sovereign immunity). *Id.*

Specifically as in this case, Congress assigned duties to employers and the federal government by giving rights to employees and US citizens, such as through the Bill of Rights and FMLA. *Decatur v. Paulding*, reaffirmed by *Loper*, found it is the judiciary's role to "interpret the act of Congress, in order to ascertain the rights of the parties." *Decatur v. Paulding*, 39 U.S. 497, 515 (1840). With *Loper*, cases cited by the defense are now overturned. 144 S. Ct. 2244 (2024). Therefore, no cases should be dismissed for lack of subject matter jurisdiction due to federal sovereign immunity as it would limit the duty of the judiciary to review cases. For why sovereign immunity does not apply to Constitutional rights, please see § II(5)((d)) below. As for statutory and other legal causes of action besides the Constitution, Courts have found that some cases do not require express waivers of sovereign immunity, such as the Fair Credit Reporting Act. *Dep't of Agric. Rural Dev. Rural Housing Serv. v. Kirtz*, 601 U.S. 42 (2024) Therefore, this case should be able to proceed even without a waiver of sovereignty.

*(b) Backdoor Return to Segregation*

The US government's interpretation of the denial of sovereign immunity (especially for FMLA and constitutional amendments) would effectively return the federal workplace to the pre-segregation era to shield itself from accountability. It would be a backdoor attempt to reverse *Brown v. Board of Education* and reinstate separate but equal. *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954). The granting of Defendants' motion would effectively dismantle protections for federal employees and disparately impact minorities, women, those with disabilities, and members of other marginalized groups. Employees from these groups could be denied bathroom breaks, FMLA leave, sick leave, and other government employee benefits without recourse.

Here, individuals mistreating Plaintiff was not an officially stated government policy designed to be implemented nationwide because both Plaintiffs and individual Defendants were government employees. *See* § II(5)(c) below regarding government policy. Federal employees take oaths of office to uphold (not violate) the US Constitution, and attorneys are required by professional ethics requirements not to violate the law, especially DC and California attorneys

who are required not to discriminate in the practice of law. *See e.g.,* 5 U.S.C. § 3331; Cal. Rules of Prof'l Conduct r. 5.1, 5.3, and 8.4.1. Defendants acted outside of their responsibilities as government attorneys and employees in mistreating others by violating discrimination laws, the US Constitution, and other laws. *Loper* held that it is the role of the judiciary (not the executive branch) to determine who can be sued where there is silence by Congress, as the judiciary and executive branch are both part of the sovereign. *Loper*, 144 S. Ct. at 2248.

Dismissing the case based on sovereign immunity would enable discriminatory policies and practices. For example, women of color who engaged in protected activity in OCC (e.g., Plaintiff and Toshia Cooper in *Cooper v. Nielsen*) were denied access to breaks (including bathroom usage) while they worked in OCC while white men who did not engage in protected activity were not so treated. *See Cooper v. Nielsen,* 298 F. Supp. 3d 197 (D.D.C. 2018). No federal agency or the Courts would permit claims by these marginalized employees for a separate system because the defendants violated several laws instead of only one law, pushing the case into an administrative black hole. In a separate but equal system, separate works in theory but not in practice. A separate system would not work here because of bureaucratic red tape and the inability of federal agencies and individual subunits to think beyond their silos. For instance, FEMA could not even handle recognizing that one doctor's note could certify the need for leave and the existence of a medical condition that qualified both as a disability under the Rehabilitation Act and as a serious health condition under the FMLA without requiring the doctor to fill out two separate forms, one for each law. Mr. Scott's 2016 assault of Plaintiff has yet to be investigated after more than 8.5 years, and FEMA has yet to complete Plaintiff's FOIA request for evidence (one type of document) showing a pattern of dismissing women of color in the ADR Division after about 4.5 years. Defendants violated multiple laws with both the FOIA request and assault that theoretically should be addressed but have not.

Bringing a suit only under the Rehabilitation Act and the Civil Rights Act of 1964 would not be sufficient. Whenever an action violated multiple laws, several agencies would only allow claims on one of the laws or ignore addressing the allegation despite contrary legal requirements. FEMA refused to add to the administrative complaint the restriction of bathroom usage and

breaks, a claim that violated multiple laws (e.g., OSHA, Rehabilitation Act, FMLA , FLSA, and Civil Rights Act). Similarly, OSC claimed that the EEOC would handle the matter (regardless of the specific law) while the EEOC refused to address the issue if the actions only violated specific discrimination laws but no other laws as well.  DHS IG also refused to investigate Plaintiff's claims or sent them back to named officials to hold themselves accountable.

Therefore, employers and management could deny employees of color access to bathrooms and subject them to bladder and kidney infections, deny them FMLA  leave to address those infections or use the bathroom, and subject them to other adverse actions without recourse. For example, FEMA employees without medical qualifications or factual basis declared infections certified by a doctor did not rise to the level of a serious health condition under the FMLA  even though a specific medical condition was not required for FMLA eligibility. Plaintiff met the definitions of a serious health condition and eligibility requirements for leave under the FMLA, but unqualified members of FEMA management took it upon themselves to make medical determinations. Such red tape led effectively to segregation (a separate but equal system). Employees like Plaintiff could theoretically file a complaint. However, they would have such claims omitted and might have to wait a decade before even being heard, only to potentially have claims dismissed under the sovereign immunity defense. A minuscule number of plaintiffs would make it to this stage. Where multiple interpretations exist and one interpretation of a law violates another law, the interpretation that violates another law shall not be upheld. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d at 790. Therefore, Plaintiff urges the Court to adopt the interpretation that would not enable Defendants to evade liability and create this separate system that labels some citizens as second-class citizens.

*(c)  Federal Sovereign Immunity Here Violates Policy, Regulation, and Statute*

Per 28 C.F.R. § 50.15, the government may not assert any legal defense or position against the interest of the United States. Federal sovereign immunity in this type of case is one such legal defense that Defendants should not be able to raise because it directly acts against the interests of the United States. The federal government has consistently claimed that it has aimed to be a "Model Employer." *See* 29 C.F.R. § 1614.203(c); Office of Pers. Mgmt, *Strategic Plan*

*FY 2022-2026 Goal 1 Position the Fed. Gov't as a Model Emp'r,* https://www.opm.gov/about-us/reports-publications/agency-plans/strategic-plan/goal-1-position-the-federal-government-as-a-model-employer/ (Mar. 2022); US Merit Sys. Protect. Bd., *The Fed. Gov't: A Model Emp'r or a Work in Progress? Perspective from 25 years of the Merit Sys. Principles Survey* (2008). When perpetrators feel like their organizations have a lenient stance toward discrimination (e.g., lack of sanctions), perpetrators feel empowered to discriminate. Inez Dekker & Julian Barling, *Personal & org. Predictors of Workplace Sexual Harassment of Women by Men*, JOURNAL OF OCCUPATIONAL HEALTH PSYCHOLOGY, *3*(1), 7–18 (1998), https://doi.org/10.1037/1076-8998.3.1.7 A perpetrator's perceptions of organizational sanctions (or lack thereof) predict harassment. *Id.* Because the perpetrators of discrimination know they will be protected from litigation or other consequences, asserting this defense creates the exact environment that makes perpetrators feel empowered to continue and escalate discrimination without consequence like what happened at FEMA where Defendants tried to make Plaintiff take intrusive physical and mental exams (e.g., pelvic exams, EKG), threatened to investigate her, and tried to scapegoat a black woman who was not involved in the harassment but associated with Plaintiff after she reported discrimination (including discriminatory assault) to security, amongst others.

Defending misconduct by individual defendants who violate discrimination laws, the Constitution, other laws, and professional responsibility rules while going after victims who allege discrimination based on their protected characteristics is antithetical to the government's stated position in advancing equity, retaining those with disabilities, and being a Model Employer. *See* Section (II)(b)(i) of Exec. Order. No. 14091, 3 C.F.R. § 14091 (February 16, 2023); Exec. Order No. 13985, 88 F.R. 10825 (January 20, 2021) (orders the federal government to "coordinate Government-wide efforts to advance equity."). If both sides of a lawsuit have been employees of the government, who is to say which has more right to speak for the government? Claiming that the perpetrator defendants are speaking for the government but the plaintiff victims (who are trying to uphold the law) are not would amount to a failure of equal protection and disparate impact or treatment between those who uphold the law (through protected activities or are part of protected classes but take no discriminatory actions) and those

who do not. This is because only the most egregious cases would make it to court and where defendant perpetrators (likely in positions of power) refuse to learn their lessons. This is because perpetrators would not file a lawsuit against themselves or their victims for their own violations of the law. In addition, complaints likely would not go through the entire administrative process and become a lawsuit if management supported victims in stopping, correcting, or preventing a hostile workplace. Minor cases would not make it to court because most people would not wait 10 years to see justice for a fake or minor issue (e.g., a technicality), or such cases would have been settled. If anything, courts should take official government policy (not the self-interested positions of perpetrator employees) as the official word of government position.

### (d) Constitutional Rights

Defendants misunderstand that statutes must authorize the Court's ability to review the US Constitution. U.S. CONST. art. III § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution"). Statutes and regulations do not supersede the US Constitution. *See McCulloch v. Maryland*, 17 U.S. 316 (1819). The extent of statutes and laws must not exceed the bounds of the Constitution. *See id.* In other words, the Constitution dictates the scope of statutes and not vice versa. As found in *Marbury v. Madison*, federal courts have the power to review the constitutionality of executive behavior and statutes therein. *Marbury v. Madison*, 5 U.S. 137 (1803). The right of federal courts (including District Courts) to review federal executive action and the constitutionality of statutes means that Plaintiffs are allowed to sue the federal government about such federal action and the constitutionality of statutes because federal courts do not provide advisory opinions. Plaintiffs must have standing to sue. Courts can enforce claims of violations of Constitutional rights even without an enabling statute to waive sovereign immunity. *Obergefell v. Hodges*, 576 U.S. 644 (2015) ("the Nation's courts are open to injured individuals who come to them to vindicate their own direct, personal stake in our basic charter, and an individual can invoke a right to constitutional protection when he or she is harmed, even if the broader public disagrees and even if the legislature refuses to act."). *See also Davis v. Passman*, 442 U.S. 228, 240-245 (1979). Even so, 28 U.S.C. § 1343(3) is a statute that specifically authorizes district courts original jurisdiction over constitutional

claims. In addition, sovereign immunity does not cover "[s]uits that charge federal officials with unconstitutional acts" because unconstitutional acts are "necessarily" outside of the officials' official capacity. *U.S. v. Yakima Tribal Ct.*, 806 F.2d 853, 859 (9th Cir. 1986) (citing *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 690 and 696-97 (1949)). *See also Adams*, 165 F. Supp. 3d at 919. "If Congress wishes to deny federal employees the ability to redress alleged constitutional violations, it must state its intention clearly." *AFGE Local 1 v. Stone*, 502 F.3d 1027, 1029 (9th Cir. 2007).

1st Amendment litigation is common, so it must be the case sovereign immunity does not apply in 1st Amendment cases as the 1st Amendment only applies to government (not private) action against citizens. As noted in § II(5)(d) above, sovereign immunity does not or should not apply to Constitutional claims. Moreover, under 42 U.S.C. § 1983, a plaintiff may bring a claim against public officials who, acting in their official capacity, retaliate against, obstruct, or chill the plaintiff's 1st Amendment rights. This principle is well-established in case law, as seen in *Arizona Students' Association v. Arizona Board of Regents*, where the 9th Circuit held that "a plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). The 1st Amendment to the US Constitution guarantees that citizens have the right to be free from governmental actions taken to retaliate against the exercise of 1st Amendment rights or to deter them from exercising those rights in the future. The 9th Circuit affirmed this in *Sloman v. Tadlock*, stating that "under the First Amendment, a citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future." *Sloman v. Tadlock,* 21 F.3d 1462, 1469-70 (9th Cir. 1994). Therefore, 1st Amendment claims should be allowed to proceed.

### (e) 42 U.S.C. §§ 1981, 1983, 1985, and 1986

Claims brought under 42 U.S.C. *§ 1981-6* should stand both against the federal government and individual defendants. As stated above, federal sovereign immunity should not exist at all. Even if the Court were to find that not to be the case, federal sovereign immunity

should not be found for 42 U.S.C. *§§ 1981, 1983, 1985, and 1986* for the following reasons. 42 U.S.C. § 1988 specifies remedies (attorney's fees and expert fees) for winning cases under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. *See Kirtz*, 601 U.S. 42. This implies that cases must be able to be brought to win a lawsuit, which would mean that the Court would have jurisdiction to hear these cases and that federal sovereign immunity does not apply to these cases. An explicit waiver of immunity is not required, especially when reading that 42 U.S.C. §1981-6 provisions address fundamental rights, authorizing suits based on Constitutional violations. *Obergefell v. Hodges*, 576 U.S. 644 (2015). 42 U.S.C. §§ 1983 and 1985 impose liability upon a person, and a federal agency is not a person within the meaning of these provisions. *Jachetta v. U.S.*, 653 F.3d 898, 902 (9th Cir. 2011).

### i. *42 U.S.C. § 1981*

Prior cases allowing federal sovereign immunity for § 1981 were wrongly decided or overturned considering recent US Supreme Court cases *Obergefell* and *Loper* requiring or allowing judicial review (including of executive branch activities) without any authorizing statute or deference to the executive branch. *See Obergefell v. Hodges*, 576 U.S. 644 (2015); *Loper*, 144 S. Ct. at 2248. Moreover, the cases that dismissed claims under § 1981 dismissed claims in conjunction with other 42 U.S.C. provisions for the same reasons, but other cases have upheld suits under the other 42 U.S.C. provisions. For example, it is inconsistent to allow a 42 U.S.C. §1985 and 1986 claim but not a § 1981 claim although none of them explicitly waive sovereign immunity in their own statutes but rather waiver is present through other statutory conditions (or waiver is not required at all). *See Bowie v. Maddox*, 642 F. 3d 1122 (DC Cir. 2011). Therefore, it is inconsistent and arbitrary to dismiss some claims but not others although all claims are in the same situation.

### ii. *42 U.S.C. § 1983*

42 U.S.C. § 1983 is often used as the jurisdictional basis for constitutional claims, so they must be allowed as stated in § II(5)(d) above. "A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Ariz. Students' Ass'n*

1    *v. Ariz. Bd. of Regents*, 824 F.3d at 867**Error! Bookmark not defined.**. Even if the Court does

2    find immunity for the federal government, individuals are not immune because they are not

3    agencies. *See* § II(2) above regarding the right to sue and individual defendants under § 1983.

### iii.    42 U.S.C. § 1985

5    28 U.S.C. § 1343 specifically provides district courts jurisdiction over claims related to

6    42 U.S.C. § 1985. A DC Circuit case, where FEMA/DHS headquarters sits, *Bowie v. Maddox*

7    held that a federal employee could sue a federal agency under 42 U.S.C. § 1985 in addition to a

8    Title VII claim, overturning the district court ruling of only allowing a Civil Rights Act of 1964

9    (Title VII) claim to proceed, dismissing all other claims including the claim based on 42 U.S.C. §

10   1985. *Bowie v. Maddox*, 642 F. 3d 1122 (DC Cir. 2011). Furthermore, immunity does not

11   extend to federal employees sued as individuals who use their office to violate the Constitution.

12   *See Kenyatta v. Moore*, 623 F. Supp. 224 (S.D. Miss. 1985).

### iv.    42 U.S.C. § 1986

14   Moreover, the court in *Bowie v. Maddox* only upheld the dismissal of the claim based on

15   42 U.S.C. § 1986 because the plaintiff in the case did not state enough facts to support the claim

16   but the circuit would have allowed the *§ 1986* claim because it did not dismiss the claim based

17   on a defense of sovereign immunity. *Bowie v. Maddox*, 642 F. 3d 1122 (DC Cir. 2011).

### (f)  Equal Pay Act (EPA) and Fair Labor Standards Act (FLSA)

19   Any claims based on the EPA should not be dismissed based on sovereign immunity

20   because the EPA is an amendment to the FLSA, and the FLSA expressly waives sovereign

21   immunity to be brought in "any federal or state court of competent jurisdiction." *Tallacus v. U.S.*,

22   113 Fed. Cl. 149, 2013 WL 5665260 (Fed. Cl. 2013).

### (g)  22 U.S.C. § 7102(8) (Involuntary servitude)

24   22 U.S.C. § 7102(8) is the statutory version of the 13th Amendment that outlaws slavery.

25   Since the right to be free from slavery is a fundamental right that courts may review, by

26   extension 22 U.S.C. § 7102(8) is also such a statute. *See Obergefell*, 576 U.S. at 677.

### (h)  Privacy Act/FOIA

28   Executive branch policy favors disclosing documents, so arguments of sovereign

immunity for FOIA/Privacy Act cases should not apply. Exec. Order No. 13,392, 70 F.R. 75373

(February 14, 2005) ("The effective functioning of our constitutional democracy depends upon the participation in public life of a citizenry that is well informed."). "Further, the Freedom of Information Act and the Privacy Act, 5 U.S.C. §§ 552 and 552a, also create a private cause of action and waive sovereign immunity in certain circumstances related to the creation and disclosure of agency records." *Kirk v. U.S.* (D.Ariz. Apr. 20, 1998, No. CIV-97-648-PCT-SMM) 1998 U.S.Dist.LEXIS 15423, at *4 [82 A.F.T.R.2d (RIA) 1998-6563]. Even if not authorized under FOIA or the Privacy Act itself, the APA allows the judiciary to review inactions by the judiciary. *See* § II(4) above.

### (i)  *"Speak Out Act" and California Silence No More Act (a.k.a. SB 331)*

42 U.S.C. § 19403(b) specifically states that state law (i.e., the California Silence No More Act) is still applicable even where the federal Speak Out Act (42 U.S.C. §§ 19401-19404) applies. Moreover, per California public policy, the same standards for California and federal law apply, especially to California attorneys or those supervising California attorneys (or attorneys from other jurisdictions banning discrimination in the practice of law) working on Plaintiff's complaint. *Xin Liu v. Amway Corp.*, 347 F. 3d 1125, 1137-8 (9th Cir. 2003) (finding the same rationale and standards for California laws should apply to its federal law counterparts).

### (j)  *California Labor Code § 98.6(b)(1)*

California Labor Code § 98.6(b)(1) is not a claim unto itself but rather a descriptor of how claims should be interpreted in California (a presumption of causality where protected activity occurs within 90 days of discrimination). This code should be adopted here because it would not make sense to have two different interpretations of suspect timing in California under different discrimination laws. *Xin Liu v. Amway Corp.*, 347 F. 3d at 1137-8 (finding the same rationale and standards for California laws should apply to its federal law counterparts).

### (k)  *Monetary Actions*

Claims should not be dismissed simply because they do not provide monetary remedies since non-monetary remedies are also sought. *See* 5 U.S.C. §§ 702 & 703  (granting the right of judicial review by agencies who have harmed plaintiffs seeking non-monetary damages). In addition to the monetary remedies already discussed under ¶ 11 of the FAC, Plaintiff also has jurisdiction under 28 U.S.C. § 1343, 42 U.S.C. §§1981a and 1988, 28 U.S.C. § 1346(a)(2) and

(b)(1) (the Little Tucker Act), 28 U.S.C. § 1491 (Tucker Act), and other various statutes. Because the judiciary may review Constitutional violations, there is no limitation on monetary damages written in the Constitution. *Davis v. Passman* discussed the process for obtaining damages for Constitutional violations because it implies that damages are available for Constitutional violations. 442 U.S. at 248.

### III.    FMLA Claims Jurisdiction

Congress has outlined employers' duty under the FMLA and employees' right to FMLA leave. Refusing to allow individuals to bring FMLA-based cases would violate the Equal Protection clause of the US Constitution. Since such constitutional violations are impermissible, as noted in § II(5)(d) above, all FMLA claims must be allowed. Courts have found personal liability for supervisors under the FMLA, including in the public sector. *See Aguirre v. California, Case No.16-cv-05564-HSG (N.D. Cal. Nov. 16, 2017)*; *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, No. 10-3916, 2012 U.S. App. LEXIS 1776 (3d Cir. 2012). Thus, even if claims against the federal government are dismissed due to sovereign immunity, they should continue against supervisory employees personally, including HR members and lawyers involved in supervisory decisions, as discussed in § II(2) above.

FEMA classifies CORE employees as exempt from Title 5 provisions, creating ambiguity about whether Plaintiff falls under Title I or Title II of the FMLA. FEMA, *Cadre of On-Call Response/Recovery (CORE)*, https://www.fema.gov/careers/paths/core. During periods without a contract between July 13, 2016, and September 25, 2016, Plaintiff likely qualifies as a Title I employee based on definitions in 5 U.S.C. § 630(b)(2)(ii) because she would be "[a]n employee serving under a temporary appointment with a time limitation of 1 year or less." Rather, FEMA retroactively extended Plaintiff's job (in periods of less than 1 year) after her contract expired like a month-to-month arrangement after a rental contract ends. *See FAC at ¶¶ 229, 235, 242, and 244. However, during contract periods, classification under Title I or Title II depends on the interpretation of the meaning of "intermittent" and whether that definition applies to CORE employees when they are exempt from Title 5 terms. *See 5 C.F.R. § 630.1201(b)(2)(iii); 5 U.S.C.

§ 340.401(b). FEMA's intent to terminate Plaintiff shortly after she initiated an EEO complaint and requested FMLA  leave suggests discrimination. *See* FAC at ¶¶ 229, 235, 242, & 244.

If Plaintiff's employment fell under Title I of the FMLA, sovereign immunity would not apply as Defendants agree that courts have found a waiver of immunity in such cases. *See* Motion to Dismiss at 19. Under a Title I classification, the statute of limitations should be from when Plaintiff first tried to exhaust her administrative remedies and not the date of filing in court because of the length of time it took to exhaust her remedies. If classified under Title II instead, the recent decision in *Loper*, which overturned deference to the executive branch, should allow reconsideration of FMLA Title II  precedents that deferred to the executive branch in finding federal sovereign immunity in such cases. *Loper*, 144. S. Ct. 2244.

The current case also can be distinguished from previous cases Title II cases. The *Hartlzer v. Mayorkas* case cited by Defendants involving a FEMA employee likely involved an employee of a different classification (competitive service not a CORE as Plaintiff was) because the case mentioned that the FEMA employee received a PIP, which is not an administrative action given to CORE employees but only title 5 (permanent or competitive service) employees who are covered until Title II of the FMLA.  *Hartzler v. Mayorkas*, 2022 WL 15419995 (D.DC 2022).  Furthermore, while other Title II FMLA cases could have decided that federal sovereign immunity applies in those cases, it should not apply to this case because of the perverse discriminatory outcome that would result as discussed in *Brock*, which was discussed earlier in this section. *Brock v. U.S.*, 64 F.3d at 1423.

Dismissing Plaintiff's FMLA claim is inconsistent with the spirit of the FMLA. Congress drafted the FMLA to enable leave for those with medical reasons, minimize discrimination based on sex related to medical reasons "consistent with the Equal Protection Clause of the Fourteenth Amendment," and promote "equal opportunity for men and women." 28 U.S.C. § 2602. Violating the FMLA would also be a violation of California public policy. *Xin Liu v. Amway Corp.*, 347 F. 3d at 1137-8. Dismissing the claim would risk unequal access to FMLA protections based on discriminatory or retaliatory factors even if such claims could proceed under the FMLA. *See Brock v. U.S.*, 64 F.3d at 1423. If the FMLA claim were not allowed to

proceed, then the perverse incentive of blocking women, those with medical conditions, and those who engage in protected activity (whom the law was designed to protect) from unfettered access to leave and protections under FMLA while allowing others unfettered access to FMLA leave and protections. *Brock v. U.S.*, 64 F.3d at 1423. In addition, CORE employees like Therefore, the result would be a separate but equal system with a disparate impact on those who do not face discrimination or bring discrimination claims versus those who do.

Even if Title II itself does not grant sovereign immunity, the Little Tucker Act, Civil Serv. Reform Act, Mandamus Act, and the Civil Rights Act of 1964 do. 28 U.S.C. § 1346(a)(2); 5 U.S.C. ch. 11; 28 U.S.C. § 1361; 42 U.S.C. §§ 2000d & 2000e et seq. Case law has also found sovereign immunity in previous cases even without an explicit grant of such sovereign immunity. *Kirtz*, 601 U.S. 42. The federal government has a duty to provide its employees with the benefits (including leave) it (and statutes and other regulations) states it will provide and in the way that it will be provided (i.e., without interference or retaliation). Otherwise, the government would be falsely advertising jobs. Therefore, Plaintiff's case should proceed against both federal agencies and individual defendants. Additionally, even if FMLA  claims against the federal government are dismissed, they may proceed under other laws. Therefore, the interpretation that best aligns with the FMLA's purpose to protect employees facing discrimination should be adopted.

## IV.    Failure to State a Claim (FRCP 12(b)(6))

Contrary to Defendants' argument, stating too many facts or drafting the complaint in Defendants' desired structure or format are not bases for dismissing a claim under Rule 12(b)(6). A legal recitation in a complaint is not required but rather only a demonstration of the facts to state a claim. The US Supreme Court has held that a prima facie case (including comparators) in a discrimination case is not required in a complaint. *See Swierkiewicz v. Sorema*, 534 U.S. at 510. The 9th Circuit has found that setting up a *McDonnell Douglas* burden-shifting framework, as Defendants seem to suggest, is not appropriate in Title VII jury cases, as is currently the case here. *See US Ct. for the Ninth Circuit, Manual of Model Civil Jury Instructions, Ch. 10*, https://www.ce9.uscourts.gov/jury-instructions/node/166 (citing *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003), *Sanghvi v. City of*

1    *Claremont*, 328 F.3d 532, 540 (9th Cir. 2003)). Moreover, such a framework is not applicable in

2    cases of per se discrimination or where there is direct evidence of discrimination as is the case

3    here (e.g., jokes about how a woman's place is in the kitchen or when Erika Jordan said she had

4    to give her permission before Plaintiff could report up to management about discrimination,

5    including against Ms. Jordan herself). *See* FAC ¶ 193 at 46.

6         The US Supreme Court has repeatedly restated that a complaint drafted by a pro se

7    plaintiff should not be dismissed for failure to state a claim unless it "appears beyond doubt that

8    the plaintiff can prove no set of facts in support of his claim that would entitle him to relief" and

9    that such pleadings should be held to a lower standard than pleadings drafted by represented

10   parties. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (citing *Conley v. Gibson*, 355 U.S. at

11   45-46). *See also Johnson* v. *Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997); *Estelle v. Gamble*,

12   429 U.S. 97 (1976). Even so, Plaintiff has provided more than enough facts that would entitle her

13   to relief for each element of proof for each basis that Defendants name for a FRCP 12(b)(6)

14   dismissal. Since Defendants only argued regarding disparate treatment (Title VII, Rehabilitation

15   Act, FMLA ), retaliation, and HWE, no FRCP 12(b)(6) dismissals should be made on any basis

16   of discrimination not discussed by Defendants (e.g., interference, failure to accommodate, quid

17   pro quo harassment, retaliatory harassment, disparate impact). *See Sanders v. City of Newport*,

18   657 F.3d 772 (9th Cir. 2011) (noting that interference and retaliation claims are separate).

19        Contrary to Defendants' argument that it was "impossible" to match elements of a prima

20   facie element of each claim to a fact, Plaintiff has labeled each claim with a theme (e.g.,

21   "Assault/physical intimidation by a supervisor (retaliation/interference, discrimination based on

22   sex/gender, color, race, disability, and national origin" for the second claim), which provides a

23   clear descriptor of the issue for each claim. For some claims, even if the FAC refers to other

24   paragraphs, it is self-explanatory what the action at issue is because it is in the title (assault by a

25   supervisor), referred to in the claim itself, and only once instance as with Claim 2. Claim 2's title

26   includes assault by a supervisor, FAC ¶ 285 details the assault/physical intimidation, details the

27   suspect timing of the assault and direct evidence of assault (FAC ¶ 285 & 294), and details

28   comparators to Plaintiff's protected classes and activity (e.g., FAC ¶ 298-301). The top of the

1    claim (e.g., FAC ¶ 284 for claim 2) also specifically referenced paragraphs that are most relevant

2    to that specific claim. The FAC should not need to repeat Plaintiff's protected classes and

3    qualifications for every claim when those things can save space when incorporated by reference.

4    *See e.g.,* FAC § VI (listing the bases of discrimination); FAC ¶ 86 (Plaintiff's qualification).

5    Plaintiff reduced the FAC by 10 pages by referencing facts already mentioned elsewhere.

6              (1)    <u>Title VII Disparate Treatment</u>

7              Plaintiff incorporated other parts of the FAC by reference because she correctly

8    anticipated that Defendants would ask Plaintiff to overexplain, as has been the case. While it

9    should be self-explanatory about which prima facie elements are references or can be inferred

10   (e.g., providing comparators of treatment of Plaintiff compared to those of other protected

11   classes not only discusses the comparators but also the protected classes at issue), Plaintiff also

12   references other sections of the FAC (e.g., § VI) if Defendants claim that they cannot discern that

13   Asian is a race FAC (¶ 30). In reference to claim 1, contrary to Defendants' allegations, Plaintiff

14   showed many examples of comparators. *E.g.,* FAC ¶¶ 253-258, 260-271, 273-277, 279, 282-

15   283). Elsewhere in the FAC, Plaintiff even used specific words indicating comparators, such as

16   seen in FAC ¶ 125, 274, 422, 463, 517, 647, 811, 875(vii), & 930. More examples could still be

17   revealed in discovery. More examples could have been revealed had FEMA conducted an

18   official investigation, not tried to destroy evidence, or disclosed the information to Plaintiff's

19   requests. From these comparators, from the title of the claim, and specifically incorporated facts

20   (FAC ¶251 for claim 2), one can figure out the adverse actions involved in the claim (e.g.,

21   changing the advertised job description from ADR attorney advisor to an administrative or

22   housekeeping position for women, especially women of color). It is for the jury to decide

23   whether Plaintiff meets the burden of proof for an adverse action, so claims not be dismissed at

24   the complaint drafting stage just because Defendants think that an element of the claim does not

25   fit their definition (i.e., does not meet the burden for proving an adverse action).

26            Plaintiff can clarify which claims were adverse actions for each claim. However, if

27   Plaintiff does so, this would significantly increase the length of the complaint. Defendants can

28

1   simply argue against something as an adverse action instead of requiring Plaintiff to do so.

2   Plaintiff is amenable to listing more examples not listed.

3        (2)   <u>Rehabilitation Act Disparate Treatment</u>

4        Contrary to Defendants' argument, Plaintiff labeled the basis of her claims, stating a

5   failure to accommodate in the claim titles where applicable (e.g., Claim 24). Even if Plaintiff did

6   not title the bases of the claims, one can determine the basis of the claim based on the facts

7   described in the claim and eliminate based on the title (e.g., Claim 3, which is named "hostile

8   work environment," is talking about HWE and not another basis, such as failure to

9   accommodate). Rule 12(b)(6) does not require that the facts to meet the prima facie elements

10  need to be in a specific order to avoid dismissal, only that there need to be enough facts.

11       (3)   <u>FMLA Disparate Treatment</u>

12       Contrary to Defendants' claim, Plaintiff states why she is bringing a claim on FMLA

13  (e.g., FAC ¶ 30; Claim 22, Line 4), and Defendants themselves also repeated. For example, claim

14  27's title "Retaliation/interference for requesting accommodations and exercising FMLA rights"

15  states the relationship of the claim to the exercise of FMLA rights and describes how Ms. Jordan

16  claimed that Plaintiff could only exercise reasonable accommodations or FMLA rights, but not

17  both. Additional facts beyond that are not required under even the prima facie case Defendants

18  recite although that set of prima facie elements (denial of FMLA leave) is not the only way to

19  prove retaliation or interference under FMLA. For example, in claim 9, non-payment for work

20  after Plaintiff tried to exercise her FMLA rights or to prevent Plaintiff from exercising those

21  rights is clearly an adverse action. The same adverse actions under Title VII and the

22  Rehabilitation Act for claims 16, 18, 21, 22, and so forth for retaliation/interference within the

23  same suspect timing would apply to FMLA retaliation/interference as well. The FAC clearly

24  claims that Plaintiff was denied leave (interference) because leave was not initially granted, and

25  delay is a denial. *E.g.,* FAC ¶ 197, 637. If Plaintiff were to split into multiple claims (one law per

26  claim) based on the same event, the resulting complaint would be exponentially longer with

27  repetitive elements as described in § I about Rule 8.

28

1    Moreover, the prima facie elements that Defendants cite only relate to one type of

2  retaliation, but not for all types of interference and retaliation. For example, FMLA  interference

3  can take many forms including, for example, using FMLA  leave as a negative factor in hiring,

4  promotions, disciplinary actions, and no-fault attendance policies. *See* 29 C.F.R. § 825.220(c)."

5  *Olson v. U.S. & MBO Partners, Inc.*, 980 F. 3d 1334 (9th Cir. 2020). *Xin Liu v. Amway Corp.*,

6  347 F. 3d 1125, 1133 (9th Cir. 2003) (The US Department of Labor "interprets 'interference' to

7  include 'not only refusing to authorize FMLA leave, but discouraging an employee from using

8  such leave'.").  In addition, the FMLA  specifically allows for "unforeseeable leave" that only

9  requires "notice to the employer as soon as practicable," a topic common enough to create an

10  entire section in regulation on the matter. 29 C.F.R. § 825.303.

11    (4)    Retaliation

12    As stated above in § (2) and (3), one incident could violate multiple laws. Given her

13  intersectional identity, Plaintiff is not required to erase part of her identity to fit in a box by

14  arbitrarily claiming that Defendants only violated one law or did so on one protected basis at a

15  time. For example, her participatory protected activity of filing an EEO complaint listed all

16  relevant bases of discrimination. Contrary to Defendants' claim, retaliation is based on protected

17  activity, not categories, so naming those categories in retaliation claims is not required. Even so,

18  one can infer which categories are related when a plaintiff complains about offensive jokes,

19  behavior, and comments about specific protected categories. *See e.g.,* FAC § VI, ¶ 6.

20    Defendants' claim that the claims are too vague is simply not the case. For example, in

21  claim 2 ¶ 285, The FAC stated, "On March 22, 2016, one day after Plaintiff initiated the EEO

22  process, Plaintiff's supervisor Robert Scott assaulted/physically intimidated Plaintiff while

23  telling her that she should not have documented (i.e., written down in an email) her allegations of

24  discrimination." For the same claim, the FAC specified the protected bases and activity upon

25  which Plaintiff made her claim with the specific laws at issue. FAC, at ll. 2-6. The FAC included

26  similarly specific titles, laws addressed, facts for each claim, specified retaliatory actions, and

27  used the word retaliation in the claim body and titles. *See e.g.*, FAC ¶ 573 at 116. The statement

28

of facts, procedural history, or the claims themselves clearly show the suspect timing where protected activity predates adverse actions. *See* FAC §§ VII, VIII, & IX.

As stated above, the only requirement for a 12(b)(6) dismissal is not having enough facts to state a claim, not whether the claims were in a format that Defendants prefer. The case *Mannat v. Bank of America* that Defendants cite to support its point did not state that each claim could cite one law. *See Mannat v. Bank of Am.,* 339 F.3d 792, 800 (9th Cir. 2003). As stated above in § I, while Plaintiff could separate out each per type (e.g., retaliation) per event per law (e.g., Rehabilitation Act, Civil Rights Act), this could simply make the complaint longer for the same elements given many instances related to intersectional protected categories.

      (5)    <u>Hostile Work Environment</u>

Defendants fundamentally misunderstand the standard for an HWE and when such a standard must be met. None of the so-called requirements Defendants named are in the 9th Circuit's jury instructions for the required prima facie elements of an HWE. *See* U.S. Ct. for the Ninth Cir., *Manual of Model Jury Instructions, 10.5 Civil Rights—Title VII—Hostile Work Env't,* https://www.ce9.uscourts.gov/jury-instructions/node/666. A jury's job is to determine the facts and whether the conduct constitutes HWE, so dismissal at this stage is premature and not to be resolved this early in litigation. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643 (9th Cir. 2021).

Unlike Defendants' claim, it is not a requirement that the defendants have identical methods of discrimination for all of their actions for the same protected basis in an HWE case. Defendants miss the meaning of pattern and practice of discrimination by erroneously equating it to the same MO for every discriminatory act (as in a class action case), instead of a totality of circumstances that give rise to an HWE. *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995) (c*iting Harris v. Forklift Sys., Inc.,*510 U.S. 17 (1993) ("Hostility must be measured based on the totality of the circumstances."). Even so, reports by DHS's IG and the RAND found widespread harassment across FEMA (supported by statistics) and show the type of pattern and practice of discrimination Defendants seek. *See e.g.,* DHS IG, OIG-21-71, *FEMA Must Take Additional Steps to Better Address Emp. Allegations of Sexual Harassment & Sexual Misconduct* (2021); Rand Corp., RAND_RBA383-1, *Harassment & Discrimination in the FEMA Workplace* (2020).

1          Defendants also misread the *Porter* case in incorrectly believing HWE claims must

2   exclude discrete acts. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) ("Of

3   course, discrete acts still may be considered"). The passage of SB1300 should have overturned

4   *Porter*'s requirement including non-discrete acts to form the basis of a HWE claim because

5   SB1300 overturned the 9th Circuit's opinion *Brooks v. City of San Mateo*, stating that one

6   incident is not enough to create an HWE. *Id.* at 893. *See also* CAL. GOV'T CODE § 12923(b);

7   *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000). In addition, SB1300 (passed in 2018)

8   found that in California, an HWE is determined by the harm to the victim, not the severity of the

9   act by the perpetrator, which is the standard Defendant is trying to argue. In line with the belief

10  that a single discrete instance can constitute an HWE even for Civil Rights Act of 1964 claims,

11  the 9th Circuit reiterated the stance multiple times, especially noting that assault (as is the case

12  here) alone is enough for a finding of an HWE, and assault can be considered a discrete act.

13  *Chesier v. On Q Fin. Inc.*, 382 F. Supp. 3d 918 (D. Ariz. 2019); *Hughes v. Pair*, 46 Cal.4th 1035

14  (Cal. 2009). California has consistently interpreted its state and federal discrimination standards

15  the same. *See Hughes v. Pair*, 46 Cal.4th 1035 (Cal. 2009). *See also* CAL. GOV'T CODE §

16  12923(b) ("The legal standard for sexual harassment should not vary by type of workplace.").

17         Defendants' arguments further falter when they themselves acknowledge the numerous

18  discriminatory acts (corroborated by various DHS officials) that Plaintiff has identified. Contrary

19  to their assertion, listing multiple instances of discrimination lends credence to the pervasive and

20  continuous nature of the harassment. Contrary to Defendants' claims, the FAC has more than

21  sufficiently stated a claim for harassment, including by describing physical and verbal harassing

22  conduct. For instance, stalking, assault, battery, trapping Plaintiff in her cubicle, Defendants'

23  comments and jokes about national origin, race, color, and gender, and telling her to stop

24  documenting discrimination are by nature discriminatory, not a "usual set of activities" unrelated

25  to discrimination. Defendants' misinterpretation of the law and reliance on outdated legal

26  standards cannot obscure the reality that these acts, taken together, paint a clear picture of an

27  ongoing HWE. Therefore, Defendants' motion to dismiss must be denied.

28  **V.     Judicial Notice**

1    While the EEOC decisions provide context on the current case, when ruling on a motion

2 to dismiss, a district court should not look beyond the four corners of a complaint. *See Swartz v.*

3 *KPMG LLP,* 476 F.3d 756, 763 (9th Cir.2007); *Lee v. City of L.A.,* 250 F.3d 668, 688–89 (9th

4 Cir.2001). Particularly, the EEOC decisions should not persuade the Court to dismiss the case

5 and take the decisions with a grain of salt because of its lopsided view of evidence upon which

6 the EEOC decisions were based and serious due process deficiencies in the agency complaints

7 process, such as allowing those named as perpetrators in the discrimination complaint or their

8 subordinates to draft the charge or oversee the processing of the complaint.  Since Plaintiff

9 initiated the EEOC process in 2016, FEMA, the DHS IG, and the EEOC have yet to initiate an

10 investigation into Plaintiff's specific allegations. In addition, the EEOC refused to allow

11 discovery during the hearings process and the EEOC AJ Woodham refused to allow Plaintiff (the

12 non-sanctioned party) to present all of her evidence and rebuttal showing pretext while allowing

13 the Defendant FEMA/DHS (the sanctioned party) to present evidence on the merits after a

14 default judgment, including allowing blatantly false information and perjured testimony.

15 **VI.    Factual Corrections**

16    Defendants misstated that Plaintiff currently has cancer. She has been in remission now

17 and when she worked at FEMA. Defendants also misstated that her allegations of disability only

18 relate to PTSD and cancer. Plaintiff also brought her claim based on being regarded as having

19 disabilities (mental or emotional) that she did not have.

20 **VII.    Summary of Request**

21    Plaintiff respectfully requests that Defendants' request to dismiss be denied and that

22 Plaintiff be granted leave to amend the complaint and add any additional defendants whose

23 service will be waived, and Ms. Friend would receive service on behalf of any added defendants.

24

25    Respectfully submitted,

26

27 Date: 10/30/24

28    Jennifer Yeh

PLAINTIFF'S OPPOSITION TO DISMISS    24-CV-00797 KAW    35