UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JENNIFER YEH,

Plaintiff,

v.

ALEJANDRO MAYORKAS, et al.,

Defendants.

Case No. 4:24-cv-00797-KAW

**ORDER GRANTING MOTION TO DISMISS; ORDER CONTINUING CASE MANAGEMENT CONFERENCE**

Re: Dkt. No. 57

On September 19, 2024, Defendants Alejandro Mayorkas, U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA"), Deanne Criswell, Robert Scott, Vikram Kapoor, Erika Jordan, Kirsten Gunsolus, Adrian Sevier, Cynthia Mazur, and Joel Doolin filed a motion to dismiss Plaintiff Jennifer Yeh's first amended complaint.

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS Defendants' motion to dismiss with leave to amend.

## I. BACKGROUND

Plaintiff Jennifer Yeh is an attorney who was employed by FEMA from 2014 until March 28, 2019. (First Am. Compl., "FAC," Dkt. No. 28 ¶ 2.) Plaintiff is an Asian female of Chinese/Taiwanese descent. *Id.* Plaintiff suffers from adjustment disorder, post-traumatic stress disorder, and cancer. (FAC ¶ 87.) She was hired as an Alternative Dispute Resolution ("ADR") Attorney Advisor with the Office of Chief Counsel ("OCC") of FEMA on July 14, 2014. (FAC ¶¶ 71, 73.)

Plaintiff's voluminous complaint contains 57 pages of facts and details nearly every interaction during her employment, which makes it difficult to discern which facts are relevant to

United States District Court
Northern District of California

each of the 37 claims alleged.

In sum, Plaintiff's allegations arise out of her employment with FEMA. Plaintiff's first-line supervisor at FEMA was Deputy Director Robert Scott, who in turn reported to Director Cynthia Mazur. (FAC ¶ 75.) Mazur reported to Deputy Chief Counsel Joel Doolin. *Id.* Doolin's direct supervisor was Chief Counsel Adrian Sevier. (FAC ¶ 29.)

Many of Plaintiff's allegations relate to the conduct of her co-worker Vikram Kapoor, another ADR Attorney Advisor at FEMA, who was hired at the same time as Plaintiff under the same title and pay grade. (FAC ¶ 82.) Initially, Plaintiff and Kapoor shared a cubicle. *Id.* Plaintiff alleges that Kapoor made multiple comments suggesting that she, rather than Kapoor, was responsible for administrative work, tried to sabotage work performance, and attempted to trip her by leaving a filing cabinet drawer open. (FAC ¶¶ 93-99, 106.) Plaintiff began to complain to her first-line supervisor Scott about Kapoor's alleged behavior in the Spring of 2015, but Scott failed to take action. (FAC ¶¶ 107, 109, 111, 114, 118.) She further requested that Scott provide counseling for Kapoor on discrimination or training for the division on those issues, which Scott declined. (FAC ¶ 147.) In December 2015, Plaintiff allegedly complained to her second-line supervisor Mazur that Kapoor had been harassing her and that Scott had not taken action on her reports of Kapoor's behavior. (FAC ¶ 119.)

In a meeting to discuss a new seating plan in January 2016, Plaintiff expressed concerns for her safety, claiming that the plan would "subject her to workplace violence" because it called for flexible seating that would allow Kapoor to sit near her. (FAC ¶ 121.) Around the same time, Scott allegedly followed Plaintiff into her cubicle, slammed his hand down, told her "not to speak about her allegations," and "threatened her employment." (FAC ¶ 129.) Plaintiff further alleges that Scott assaulted her on March 22, 2016, when he accused her of sending "hate mail" and allegedly cornered her at her desk regarding e-mails documenting her allegations of discrimination. (FAC ¶ 160.)

On March 18, 2016, Plaintiff reported the harassment to Doolin, her third-line supervisor. (FAC ¶ 156.) Doolin forwarded her allegations to Sevier. (FAC ¶ 158.) On April 4, 2016, Plaintiff was assigned to Erika Jordan as her first-line supervisor in place of Scott. (FAC ¶ 163.)

Plaintiff alleges that she received satisfactory performance reviews in 2014 and 2015; however, in early 2016, Plaintiff's performance reviews began to decline, and Scott told her on March 28, 2016, that she was not meeting expectations. (FAC ¶¶ 81, 161.) Plaintiff alleges that this was a direct result of her complaints about Kapoor, *id.* ¶ 138, and that she was instructed not to participate in a work subgroup on promotions, performance reviews, and awards, because she was "taking on too much." (FAC ¶ 146.)

Plaintiff alleges that following her complaints, Scott reprimanded Plaintiff unfairly. (FAC ¶¶ 108, 110, 114.) In one incident, Scott allegedly called Plaintiff "argumentative." (FAC ¶ 108.) In January 2016, Plaintiff alleges that Scott gave her an "emotional intelligence" assignment and ordered her "to see a therapist." (FAC ¶¶ 123, 128.)[1] According to Plaintiff, Scott indicated that he regarded Plaintiff as having a mental disability and characterized her as having "a 'misplaced' perspective that was causing her to 'behave badly' and creating 'people who do not exist.'" (FAC ¶ 128.)

On April 26, 2016, after Jordan replaced Scott as her first-line supervisor, Plaintiff complained to Mazur that she believed Jordan's work expectations constituted continued harassment and interference with participation in EEO activity. (FAC ¶ 180.) On May 4, 2016, Plaintiff asked Mazur to change her negative performance evaluations because "they were based on illegal and unethical activity." (FAC ¶ 191.) Mazur allegedly responded that she did not believe Plaintiff's allegations of retaliation and declined to adjust the performance review. (FAC ¶ 192.)

In April 2016, Plaintiff began taking intermittent sick and FMLA leave due to bronchitis and potentially other unspecified health issues. (FAC ¶¶ 173, 636.) Plaintiff alleges that Jordan refused to designate certain portions of her leave as FMLA. (FAC ¶¶ 176, 200.) She further alleges that Jordan limited Plaintiff's "EEO time." (FAC ¶ 178.) Specifically, on April 29, 2016, Jordan allegedly told Plaintiff that allocating 6-10 hours per week to EEO issues was not

[1] Later in the FAC, it appears that Scott referred Plaintiff to FEMA's Employee Assistance Program ("EAP"), a work-sponsored program that can include a limited number of sessions with a therapist. (FAC ¶ 576.)

reasonable. (FAC ¶ 187.) On May 20, 2016, Plaintiff's psychologist provided a letter supporting Plaintiff's need to take leave through June 3, 2016, due to Plaintiff's psychological condition. (FAC ¶ 198.) The letter further stated that Plaintiff would be able to fully complete her duties if she were in a different work environment. *Id.* On June 23, 2016, Plaintiff's doctor certified that Plaintiff's psychological condition had been exacerbated by the working conditions in her division, and that this could be mitigated by either transferring "all of [Plaintiff's] harassers, such as the harassing management staff" or reassigning Plaintiff to a new management team. (FAC ¶ 213.) On June 30, 2016, Jordan ordered that Plaintiff be reassigned to a vacant position within FEMA or a position that would become vacant in the next 60 days. (FAC ¶ 214.) Human Resources was tasked with conducting the search for the reassignment. *Id.* That same day, Plaintiff exhausted her paid leave and was put on leave without pay. (FAC ¶ 215.) On October 13, 2016, Plaintiff was ultimately reassigned to a new position as Attorney Advisor in FEMA's OCC Response and Recovery Legal Division, where she worked until her termination in 2018. (FAC ¶¶ 243, 773.)

On January 11, 2016, Plaintiff reported to FEMA's Equal Employment Opportunity ("EEO") office about the alleged hostile work environment in the ADR division and inquired about how to file a discrimination complaint. (FAC ¶ 32.) Plaintiff's initial interview with an EEO counselor occurred on March 21, 2016. (*See* Decision on Liability, Defs.' Req. for Judicial Notice, "RJN," Dkt. No. 58, Ex. 1 at 3.) On June 22, 2016, Plaintiff filed a formal complaint of discrimination with subsequent amendments. *Id.* In her complaints, Plaintiff alleged discrimination based on race, national origin, color, and disability; equal pay; harassment and/or hostile work environment; and reprisal. *Id.* at 4.

In January 2020, an Administrative Judge ("AJ") held a three-day hearing. *Id.* at 4. In a subsequently issued decision, dated September 30, 2022, the AJ found in favor of FEMA on the merits of each of Plaintiff's claims. *Id.* at 14-25. Plaintiff, however, was awarded nominal damages of $10,000 due to FEMA's failure to complete its investigation of Plaintiff's EEO claim and to timely provide a Report of Investigation to Plaintiff. *Id.* at 25-26. On November 8, 2022, FEMA issued a Final Agency Decision ("FAD") implementing the AJ's decision. (*See* RJN, Ex. 2

at 1.) Plaintiff appealed to the Office of Federal Operation ("OFO"), which affirmed the FAD. (RJN, Ex. 2.) On November 13, 2023, the OFO denied Plaintiff's Request for Reconsideration. (RJN, Ex. 3; FAC, Ex. 1.)

On February 9, 2024, Plaintiff filed the instant case. (Dkt. No. 1.) On May 14, 2024, Plaintiff filed the first amended complaint, which alleges 37 causes of action. (First Am. Compl., "FAC," Dkt. No. 28.) On September 19, 2024, Defendants filed a motion to dismiss. (Defs.' Mot., Dkt. No. 57.) On October 30, 2024, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 64.) On November 15, 2024, Defendants filed a reply. (Defs.' Reply, Dkt. No. 67.)

## II. LEGAL STANDARD

### A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

**C. Request for Judicial Notice**

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso*, 989 F.2d 331,

333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III. DISCUSSION

### A. Request for Judicial Notice

As an initial matter, Defendants ask that the Court take judicial notice of three documents related to Plaintiff's underlying administrative proceeding: 1) Decision on Liability and Relief, issued on September 30, 2022, in *Jennifer Yeh v. Alejandro Mayorkas*, EEOC No. 570-2017-00832X; 2) Decision on Appeal, dated May 4, 2023, in *Jennifer Yeh v. Alejandro Mayorkas*, Appeal No. 2023001109; and 3) Decision on Request for Reconsideration, dated November 13, 2023, in *Jennifer Yeh v. Alejandro Mayorkas*, Appeal No. 2023001109. (Defs.' Req. for Judicial Notice, "RJN," Dkt. No. 58.)

Plaintiff does not oppose the request for judicial notice, and, in fact, attached Defendants' exhibit 3 to the complaint, so that exhibit is incorporated by reference. (*See* FAC, Ex. 1.) The district court may judicially notice Plaintiff's Equal Employment Opportunity ("EEO") complaints and other administrative documents maintained as part of the EEO process. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (taking judicial notice of documents pertaining to plaintiff's administrative proceedings). In fact, "[c]ourts in this district have routinely taken judicial notice of documents in the EEOC and DFEH administrative records." *Wyatt v. City of Burlingame*, No. 16-cv-02681-DMR, 2017 WL 565303, at *1 (N.D. Cal. Feb. 13, 2017) (citing *Adetuyi v. City & Cty. of San Francisco*, 63 F. Supp. 3d 1073, 1080–81 (N.D. Cal. 2014)); *see also Critchfield v. Preston Pipelines Inc.*, No. 20-CV-02981-LB, 2020 WL 4505512, at *1 (N.D. Cal. Aug. 5, 2020) (same).

As such, the court may take judicial notice of the official records from an EEO proceeding. *See Cloud v. Brennan*, 436 F.Supp.3d 1290, 1303 (N.D. Cal. 2020).

Accordingly, the Court GRANTS Defendants' request for judicial notice.

**B. Motion to Dismiss**

**i. Failure to Satisfy Federal Pleading Standards**

Defendants move to dismiss all claims on the grounds that the amended complaint fails to satisfy Rule 8. (Defs.' Mot. at 1.) Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Here, the operative complaint does not clearly identify the purported claims, violations, or even provide a formulaic recitation of the elements of each cause of action, which would still be insufficient to withstand a motion to dismiss under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555.

The operative complaint also does not plainly and succinctly identify the facts giving rise to each legal claim and the facts that support the elements of that claim. Instead, the 190-page complaint consists of a lengthy set of facts giving rise to 37 causes of action instead of properly identifying the specific facts that gives rise to each claim, as required by Rule 8. As such, the complaint fails to plead sufficient facts of Defendants' purported wrongdoing to provide fair notice of the claims alleged against them and the grounds upon which those claims rest. Moreover, Plaintiff's opposition is devoid of any factual background and rarely references specific paragraphs in the operative complaint, and Plaintiff's responsibility to identify the facts and arguments in support of her position cannot be shifted to the Court. *See Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 440 (9th Cir. 2020) ("It is not the court's duty, however, to peruse the record to formulate the parties' arguments"); *see also Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 386 (9th Cir. 2010) ("It behooves litigants, particularly in a case with a record of this magnitude, to resist the temptation to treat judges as if they were pigs sniffling for truffles."). Indeed, the excessive length of the operative complaint makes this a practical impossibility.

Accordingly, as currently pled, the amended complaint is wholly insufficient and must be amended to comply with the *Iqbal-Twombly* pleading standard. The second amended complaint

United States District Court
Northern District of California

should clearly delineate each legal claim, and state facts indicating the nature and grounds for each claim. Specifically, each cause of action should clearly state the alleged violation, the statutory authority, the date on which the incident occurred, who was involved, the facts, and how the claim satisfies the elements rendering it a viable cause of action. Plaintiff must also clearly identify which defendants each cause of action is against.

Moreover, several of the claims are repetitive and could be incorporated into single claims. For example, Plaintiff alleges separate claims for retaliation for each incident of alleged retaliation, but those should be combined into a single cause of action for retaliation that then lists a short summary of each incident as examples of retaliation.

**ii. Subject Matter Jurisdiction**

Next, Defendants argue that all non-employment discrimination claims should be dismissed for lack of subject matter jurisdiction. (Defs.' Mot. at 14.) While the operative complaint is subject to dismissal for failure to comply with Rule 8, the Court will address Defendants' jurisdictional arguments to provide Plaintiff with guidance in streamlining her second amended complaint.

a. Employment discrimination claims may only be brought under Title VII, the Rehabilitation Act, or Family Medical Leave Act ("FMLA").

Defendants argue that the Court must dismiss any employment discrimination claims that are not brought under Title VII of the Civil Rights Act, the Rehabilitation Act or FMLA, because those statutes are the exclusive remedies for federal sector employment discrimination. (Defs.' Mot. at 14.)

Title VII "provides the exclusive judicial remedy for claims of discrimination [based on race, color, religion, sex, and national origin] in federal employment." *Brown v. General Services Admin.*, 425 U.S. 820, 835 (1976). The Ninth Circuit has held that "allowing additional individual remedies would interfere with th[e] carefully devised scheme [of Title VII] by permitting circumvention of administrative remedies." *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916 (9th Cir. 1981). Similarly, the Rehabilitation Act is the sole remedy for federal employees alleging claims of disability discrimination. *Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989).

Finally, the FMLA creates a private right of action for employees whose employer interferes with, restrains, or denies their exercise or attempt to exercise their FMLA rights. *Bonzani v. Shinseki*, No. 11-cv-0007-EFB, 2011 WL 4479758, at *5 (E.D. Cal. Sep. 26, 2011).

In opposition, Plaintiff argues that constitutional claims should be able to coexist with federal discrimination claims. (Pl.'s Opp'n at 5.) Plaintiff's reliance on *White v. General Services Administration*, 652 F.2d at 917, is misplaced. (Pl.'s Opp'n at 5.) While *White* acknowledged that "Title VII does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin," it concluded that the claims of retaliation fell within the scope of Title VII, such that the plaintiff had "not asserted a separate constitutional claim for which there is no statutory remedy." 652 F.2d at 917. Thus, there was no *Bivens*-type action available, and the Title VII claims were only actionable against the United States. *Id.*[2]

Moreover, courts generally dismiss, with prejudice, claims that are based on the same factual allegations as federal employment discrimination claims. *See Drevaleva v. Dep't of Veterans Affs.*, 835 F. App'x 221, 223 (9th Cir. 2020) (affirming dismissal of constitutional and state law claims "because federal employees are limited to using federal employment laws to redress employment discrimination"). Here, Plaintiff's claims for employment discrimination arise solely under Title VII, the Rehabilitation Act and/or the FMLA, such that the other discrimination claims based on the same alleged facts are subject to dismissal with prejudice.

Thus, to the extent that Plaintiff alleges employment discrimination arising under any other statutory basis— including the California Labor Code and constitutional claims under 42 U.S.C. §§ 1981, 1983, 1985—those are dismissed with prejudice, and Plaintiff shall not include them in the second amended complaint.

//

---

[2] As discussed below, there is a narrow exception where a tort can be alleged under the Federal Tort Claims Act ("FTCA"). *See* discussion, *infra*, Part III.B.ii.c. Even so, tort claims based on the same workplace discrimination as Title VII and Rehabilitation claims are not actionable and subject to dismissal with prejudice. *Miller v. Olesiuk*, No. C-13-01856 EDL, 2013 WL 4532146, at *7 (N.D. Cal. Aug. 26, 2013), aff'd, 615 F. App'x 887 (9th Cir. 2015).

b. Employment Claims against Individual Defendants

Next, Defendants argue that Plaintiff cannot bring employment discrimination claims against individual defendants, and that the claims against the individual defendants should be dismissed with prejudice. (Defs.' Mot. at 14-15.) Rather, the proper defendant is the head of the employee's agency. *Id.* at 15. The Court agrees, because this is true for claims arising under both Title VII and the Rehabilitation Act. *See Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986) (the proper defendant in a Title VII or ADEA action brought by a federal employee is "the head of the department, agency, or unit."); *Bonzani v. Shinseki*, No. 11-cv-0007, 2011 WL 4479758, at *4 (E.D. Cal. Sept. 26, 2011) (same for Rehabilitation Act claims); *Miller v. Olesiuk*, No. 13-cv-01856 EDL, 2013 WL 4532146, at *7 (N.D. Cal. Aug. 26, 2013), *aff'd*, 615 F. App'x 887 (9th Cir. 2015) (same, for Rehabilitation Act and Title VII).

In opposition, Plaintiff contends that the individual defendants must be held accountable, and that they are being sued for actions taken both during and after their employment at FEMA/DHS. (Pl.'s Opp'n at 7-8.) As an example, but without citing to the operative complaint, Plaintiff claims that Defendant Scott lied at the 2020 EEOC hearing and defamed Plaintiff after they had both left the agency. *Id.* at 8. This could theoretically be an individual tort claim, rather than an employment discrimination claim.

Plaintiff further argues that she can bring constitutional claims under § 1983 against individual defendants working for the United States government. (Pl.'s Opp'n at 8.) Plaintiff's reliance, however, on *Brock v. United States*, 64 F.3d 1421, 1424 (9th Cir. 1995), is misplaced. *Id.* In *Brock*, the Ninth Circuit held that a federal employee's allegations of sexual assault and rape committed by her supervisor were a "highly personal" violation that were separately actionable under the Federal Tort Claims Act ("FTCA"), because the alleged wrongdoing was not "wholly eclipsed by Title VII." 64 F.3d at 1423-24. Thus, while Plaintiff may potentially allege FTCA claims against individual defendants, she cannot allege employment discrimination claims against them.

In reply, Defendants argue more broadly that Plaintiff is also not permitted to bring tort claims against individuals working for the federal government. (Defs.' Reply at 4.) Defendants,

however, are mistaken. Indeed, tort claims may be alleged against individual defendants if they were acting outside the scope of their employment. *Curtis v. Treasury Dep't*, No. C05-04964MJJ, 2007 WL 460646, at *3 (N.D. Cal. Feb. 7, 2007) (citing *Billings v. United States*, 57 F.3d 797, 799 (9th Cir. 1995)). If the conduct is deemed outside the scope of employment, however, the United States will not be liable. *See* 28 U.S.C. §§ 2679(a), (b) (The FTCA's limited waiver of sovereign immunity only permits for a finding of liability against the United States when an employee was acting within the scope of their employment.)

Accordingly, in amending her complaint, Plaintiff is not permitted to allege her employment discrimination claims against the individual defendants. Rather, the proper defendant is the head of the agency.

c. FTCA Claims

Defendants move to dismiss the tort claims because Plaintiff does not name the United States as the proper defendant, nor does she allege that she exhausted her administrative remedies. (Defs.' Mot. at 16.) In opposition, Plaintiff is amenable to naming the United States as the proper defendant for the tort claims and contends that she fully exhausted her administrative remedies. (Pl.'s Opp'n at 10-11.) Specifically, Plaintiff contends that she exhausted her claims in the following ways:

> through her OCC chain of command within (first-line supervisors up to Mr. Doolin who in turn reported the matter to Chief Counsel Mr. Sevier), the FEMA Administrative Investigations Division (AID) Team (which includes OCC representatives), to the Office of Equal Rights (who would have an OCC lawyer review the matter), and the Office of Professional Responsibility (who would also likely have an OCC lawyer review the matter), and various other OCC employees, as well as indirectly to the EEOC and DHS Inspector General (IG).

*Id.* at 11.

In reply, Defendants argue that the FTCA claims should be dismissed with prejudice for failure to exhaust, because the informal methods Plaintiff cited do not comply with the presentment requirement. (Defs.' Reply at 5-6.) Defendants are correct that informal reporting methods do not comply with the presentment requirement. *Id.* at 6 (citing *Bailey v. United States*, 642 F.2d 344, 346 (9th Cir. 1981)).

It is unclear whether Plaintiff complied with 28 U.S.C. § 2675(a), which requires that, a

federal court action against the United States (on behalf of a federal agency) "'shall not be instituted' unless 'the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.'" *Stansberry v. United States*, No. 4:18-CV-01563-KAW, 2018 WL 5619741, at *7 (N.D. Cal. Oct. 29, 2018) (quoting 28 U.S.C. § 2675(a)). "[A] claim shall be deemed to have been presented when a Federal agency *receives* from a claimant ... an executed Standard Form 95 or other written notification of an incident...." *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1251 (9th Cir. 2006) (quoting 28 C.F.R. § 14.2(a))(emphasis in original). The written claim must be "accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing…." 28 C.F.R. § 14.2(a). Based on the opposition, it is unclear whether Plaintiff presented a formal claim or merely complained of discrimination, which goes to her employment discrimination claims, rather than a separate tort claim under the FTCA. Nonetheless, Plaintiff is granted leave to amend to allege that she exhausted her administrative remedies and to add the United States as a defendant. If she cannot properly allege that she complied with all presentment requirements set forth in 28 C.F.R. § 14.2(a), including that she submitted a formal, written claim accompanied by a claim for money damages, she should not include the tort claims in the second amended complaint. If Plaintiff decides to pursue her tort claims under the FTCA, she is encouraged to attach a copy of her claim to the second amended complaint.

d. APA Claims

Defendants move to dismiss Plaintiff's APA claims on the grounds that they are not actionable, because they either relate to her discrimination and retaliation claims and cite to Title VII and the Rehabilitation Act (Claim 19) or they seek to challenge the EEOC's final determination of her discrimination claims based on various statutory and constitutional grounds (Claims 35-37). (Defs.' Mot. at 17.)

The APA limits judicial review to "agency actions 'for which there is no other adequate remedy in a court.'" *Citizens for Responsibility & Ethics in Washington v. United States DOJ*, 846

F.3d 1235, 1241 (D.C. Cir. 2017) ("*CREW*") (quoting 5 U.S.C. § 704). This limitation on the APA's waiver of sovereign immunity "reflects Congress' judgment that the general grant of review in the APA ought not duplicate existing procedures for review of agency action or provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (citation omitted); *see also Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) ("the APA waives sovereign immunity" if "an adequate remedy . . . is not available elsewhere"). An alternative remedy "need not provide relief *identical* to that under the APA in order to have preclusive effect." *CREW*, 846 F.3d at 1245 (emphasis in original).

In opposition, Plaintiff confirms that she is seeking review of the final agency decision by the EEOC. (Pl.'s Opp'n at 13.) But Plaintiff is already seeking review of the agency decision by filing the instant discrimination lawsuit in federal court, such that the "no other adequate remedy in a court" requirement is not met. *See Ward v. E.E.O.C.*, 719 F.2d 311, 314 (9th Cir. 1983) (adequate remedy challenging agency action existed by directly suing employer for discrimination in federal district court).

Since Plaintiff has not identified any remedy sought under the APA that is unavailable in connection with her employment discrimination claims, the APA claim is not actionable. Thus, all of Plaintiff's APA claims are dismissed with prejudice.

**iii. No private right of action for violations of FMLA**

Defendants' move to dismiss the FMLA claims on the grounds that Title II of the FMLA, which covers federal employees, does not contain a private right of action. (Defs.' Mot. at 19.)

The FMLA grants federal employees periods of leave for certain enumerated circumstances. *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999). While both Title I and Title II afford employees the right to leave under the FMLA, only Title I provides a private right of action to challenge FMLA violations. *Id.* at 1018-19 ("[T]he absence of an express waiver of the government's sovereign immunity in Title II of the FMLA bars private suits for violations of its provisions."). Title II of the FMLA governs leave for federal civil service employees with more than twelve months of service, while Title I governs leave for private

employees and federal employees not covered by Title II. *Id.* Most federal employees are covered under Title II. *Reed v. Department of Homeland Security*, 2017 WL 2701940, at *4 (C.D. Cal. May 25, 2017). Generally, FEMA employees are covered by Title II. *See Hartzler v. Mayorkas*, 2022 WL 15419995, at *40 (D.C. Oct. 27, 2022). In *Hartzler*, the district court found that there was no viable cause of action under the FMLA for a FEMA employee who had worked longer than 12 months and was, therefore, assumed to be a Title II employee. *Id.* at *40.

Here, the Court appears to lack subject matter jurisdiction over any FMLA claims because Plaintiff has not adequately alleged that she is anything other than a Title II employee. Plaintiff began her employment with FEMA in 2014 and began requesting FMLA leave in 2016, which is longer than 12 months of employment, and, without a specific exclusion, would result in her being covered under Title II, thereby precluding a private right of action. *See Berg v. McHugh*, No. 15-CV-02227-JSC, 2015 WL 9024622, at *7 (N.D. Cal. Dec. 16, 2015) ("[S]overeign immunity bars FMLA suits by Title II employees.") (citation omitted).

In opposition, Plaintiff argues that she was likely a Title I employee, because FEMA classifies CORE employees as exempt from Title 5 provisions. (Pl.'s Opp'n at 26.) The section of FEMA's website to which Plaintiff cites, however, only provides that CORE employees "are excluded from the provisions of title 5, United States Code, governing jobs in the competitive service. They can be hired under a streamlined process instead of a competitive process." FEDERAL EMERGENCY MANAGEMENT AGENCY, *Cadre of On-Call Response/Recovery (CORE)* (May 20, 2024), https://www.fema.gov/careers/paths/core (last visited Dec. 18, 2024). Indeed, the text of the Robert T. Stafford Act, which permits hiring for CORE positions outside the competitive process, does not clearly include FMLA provisions, and Plaintiff's opposition indicates that she is unsure whether she was a Title I or Title II employee. To the extent that Plaintiff may argue that her contract position, which was extended periodically indicating that she was "at-will" rather than tenured, would render her position a Title I position, she is incorrect because her position was not strictly limited to one year. *See* 5 CFR 630.1201(b)(2)(ii) (excludes from Title II classification "[a]n employee serving under a temporary appointment with a time limitation of 1 year or less").

In reply, Defendants argue that Plaintiff bears the burden of demonstrating that she is a Title I employee and that she has not done so. (Defs.' Reply at 6.) Since "sovereign immunity is a jurisdictional issue, … the burden is on the plaintiff to establish that there exists an applicable waiver." *Berg*, 2015 WL 9024622, at *7 (N.D. Cal. Dec. 16, 2015) (citing *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987).

While the Court agrees that Plaintiff has not met her burden of demonstrating that she is not covered by Title II, she is given leave to amend to adequately allege that she is a Title I employee. If she cannot do so, she should not include any FMLA claims in the second amended complaint.

**iv. Motion to Dismiss pursuant to Rule 12(b)(6)**

Due to the first amended complaint's failure to comply with Rule 8, the Court declines to address each of the 37 causes of action on the merits.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is GRANTED with leave to amend in accordance with this order. Plaintiff shall file the second amended complaint by July 3, 2025. She is not permitted to add any new claims[3] or new parties other than the United States in connection with any claims brought under the Federal Tort Claims Act.

In amending her complaint, Plaintiff is encouraged to contact the Federal Pro Bono Project's Help Desk for assistance—a free service for pro se litigants—by calling (415) 782-8982. While the Help Desk does not provide legal representation, the Help Desk may assist Plaintiff in crystalizing claims into cognizable causes of action.

Finally, the case management conference set for June 24, 2025 is continued to September 23, 2025 at 1:30 p.m. via Zoom videoconference.

IT IS SO ORDERED.

Dated: June 6, 2025

KANDIS A. WESTMORE
United States Magistrate Judge

[3] She is, however, encouraged to combine her causes of action.